No. 18,733.

MICHAEL LILL, *Appellant*, v. NELSON GLEASON, *Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Accommodation Indorsement by Stranger —Note Paid by Indorser—Note Not Discharged—Indorser May Enforce it Against the Maker.* A stranger to a negotiable promissory note indorsed the instrument for the accommodation of the payee, who transferred it by indorsement in blank and delivery to a holder in due course. At maturity the maker refused to pay, because of a contract executed contemporaneously with the note which relieved him from liability to the payee. The accommodation indorser had no

Lill v. Gleason.

notice of this contract at the time of his indorsement and was not a party to any fraud or illegality affecting the instrument. After default of the maker the accommodation indorser paid the note to the holder in due course, who delivered it to him. *Held*, the note was not discharged and the accommodation indorser became the holder, possessed of all the rights of the holder in due course from whom he acquired title, including the right to enforce it against the maker.

2. SAME—*Construction of Section 128 of Negotiable-Instruments Law.* The words "remitted to his former rights" contained in section 128 of the negotiable-instruments law, which provides that where the instrument is paid by a party secondarily liable thereon it is not discharged but the party so paying is remitted to his former rights as respects all prior parties, do not apply to the accommodation indorser.

3. SAME—*Payee Adjudged a Bankrupt — Title of Bona Fide Holder Not Affected.* While the note was in the hands of the holder in due course the payee was adjudged to be bankrupt. The accommodation indorser was a creditor of the bankrupt and held collateral securities for his claim. After he acquired title to the note he made composition with the trustee in bankruptcy whereby he was allowed to retain the securities. The note in question was included in the list of securities. *Held*, the title acquired from the holder in due course was not affected.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed July 7, 1914. Reversed.

*J. S. Simmons,* and *Ray H. Tinder,* both of Hutchinson, for the appellant.

*Earl Blake, W. A. Ayres,* and *C. A. McCorkle,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: On April 15, 1908, Nelson Gleason executed and delivered his negotiable promissory note to the Peerless Machinery and Supply Company for $1000, due on September 1, 1908. The note was given for stock in the machinery company and was accompanied by a written contract permitting Gleason to return the stock and receive his note duly canceled by

giving notice of his intention to the machinery company on or before August 1, 1908. On July 25, 1908, the notice was given but the note was not returned.

The machinery company indorsed the note in blank before maturity and left it with the Andale State Bank as security for money to be advanced to the machinery company under a contract providing that advancements should be made up to the sum of $3500 when collateral security indorsed by Michael Lill was deposited with the bank. The bank refused to make any advancement on the note until it was indorsed by Lill. Lill then went to the bank and wrote his name on the back of the note, pursuant to a contract with the machinery company to do so, which contract provided for security to Lill for his indorsement out of the company's assets. The bank then cashed the note. Gleason had no concern with any of these transactions. When Lill indorsed the note and the advancement was made neither he nor the bank had any notice of the contract between Gleason and the machinery company. When the note matured Gleason refused to pay. Upon demand of the bank Lill took up the note and received it without indorsement from the bank.

In an action by Lill against Gleason the court found the foregoing facts and held that Lill was not a holder in due course and that Gleason's defense to the note under his stock contract with the machinery company was good. Lill appeals.

The rights of the parties are governed by the negotiable-instruments law. (Gen. Stat. 1909, §§ 5247-5446.)

Lill became a party to the note for the accommodation of the payee (§ 36), and his original status, so far as liability was concerned, was that of an indorser, since he did not indicate an intention to be bound in some other capacity (§ 70). He thus became secondarily liable to all parties subsequent to the payee (§ 71), in this instance to the Andale State Bank.

When Lill paid the note it was not discharged. It was the policy of the law merchant and is the policy of the negotiable-instruments law to keep a negotiable instrument alive and negotiable as far as possible until the principal debtor has discharged his obligation. Discharge could not take place under either section 126 or section 128, and the general rule is that payment by a party other than the principal debtor does not discharge parties prior to the one making the payment, and the payment, instead of extinguishing the instrument, operates as a transfer of it to the party paying. (7 Cyc. 927, 1020; Note, 46 L. R. A. 781.)

The contract of an indorser for the accommodation of the payee is wholly independent of that of the maker, and such indorser, upon making payment, succeeds to the title and rights of the holder as against the maker. (1 A. & E. Encycl. of L. 356; *Stanley v. McElrath,* 86 Cal. 449, 25 Pac. 16; *Rinehart v. Schall,* 69 Md. 352, 16 Atl. 126; *Shaw v. Knox,* 98 Mass. 214; *Heaton v. Dickson and Trust Co.,* 153 Mo. App. 312, 318, 133 S. W. 159; *Sheahan v. Davis,* 27 Ore. 278, 40 Pac. 405.)

The note having been indorsed by the payee in blank it became payable to bearer and negotiable by delivery (§ 41). When it was delivered by the bank to Lill he became the bearer and holder (§ 2). Having derived title from the bank, which was a holder in due course, and not having been a party to any fraud or illegality affecting the instrument, Lill became possessed of all the rights of the bank against the maker (§ 65). It made no difference that the paper was overdue and unpaid, and would have made no difference if it had been shown that when he acquired title Lill had learned of the contract between Gleason and the supply company, to which, as between them, the note was subject. Section 65 of the negotiable-instruments law merely affirms the settled principle of the law merchant that when a negotiable instrument once passes

into the hands of a holder by indorsement in due course the maker's right to interpose defenses good against the payee is cut off as to all subsequent holders not parties to fraud or illegality affecting the instrument. The reason is that if a holder in due course could not invest his transferee with his own capacity to recover on the paper his property rights would be materially and prejudicially reduced.

Section 128 of the negotiable-instruments law reads as follows:

"Where the instrument is paid by a party secondarily liable thereon it is not discharged, but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements and again negotiate the instrument, except: (1) Where it is payable to the order of a third person and has been paid by the drawer; and (2) where it was made or accepted for accommodation and has been paid by the party accommodated." (Gen. Stat. 1909, § 5374.)

It is plain that the expression "remitted to his former rights" does not apply to Lill. He was a party secondarily liable who paid the instrument, but he had no former rights to which he might be remitted. After the payee had indorsed the note Lill indorsed it to accommodate the payee in disposing of it to the bank. Standing in that situation Lill had no title to the note or claim on either the maker or the payee. After he paid the note he had a right of some kind against somebody— the right to reimbursement from the party accommodated, the right to enforce the note against the defaulting maker, or both—but until he paid the note no obligation arose in his favor on the part of anybody, and of course the statute did not remit him to a situation in which he was entirely remediless. The words "remitted to his former rights" must therefore be restricted in their application to a party secondarily liable who has himself been connected with the title to the instrument.

"Manifestly, this section refers only to indorsers for value and not for mere accommodation. An indorser for value at some time prior to his indorsement owned the note with the right to sue upon it at maturity. With this right he parted when he discounted the paper by indorsement to a purchaser for value, who in turn by like process may transfer the title, becoming liable by his indorsement to the new indorsee, and so on without limit until the maturity of the instrument. Then, whichever of the successive indorsers is compelled to pay is restored to his former rights within the meaning of this section, upon striking out his own and subsequent indorsements.

"The case is entirely different, in reason, concerning an accommodation indorser or a guarantor. Neither of them has any 'former rights,' nor, indeed, any right whatever, until he pays the note or bill." (*Noble v. Beeman-Spaulding-Woodward Co.*, 65 Ore. 93, 107, 131 Pac. 1006, 46 L. R. A. 162.)

In the case of *Quimby v. Varnum*, 190 Mass. 211, 76 N. E. 671, it was well said that section 128 was intended to apply where the person secondarily liable can trace his title on the face of the note and its indorsements through the prior parties to the party whom he seeks to hold. This case, however, seems to decide generally that because an accommodation indorser has no rights before he has made payment to which he could be remitted, payment by him extinguishes the note. Such a result as to one in Lill's situation can not be deduced from section 126 or any other section of the negotiable-instruments law, is opposed to the express declaration of section 128 that payment by a party secondarily liable does not discharge the instrument, and is contrary to the policy of the law merchant. No reason is apparent why Lill, after having acquired the paper, might not have negotiated it to another had he seen fit to do so.

Some early Kansas cases are cited to the effect that *prima facie* Lill was a guarantor. His liability was governed by section 70 of the negotiable-instruments law, which supersedes the cases cited.

It is said that on default of the maker proper steps were not taken to charge Lill as an indorser, and consequently that he was released from liability on the note. This circumstance does not defeat his action. (*Stanley v. McElrath*, 86 Cal. 449, 25 Pac. 16; *Pinney v. McGregory*, 102 Mass. 186.)

One of the defenses to the action was that Lill acquired title to the note in December, 1909, from the trustee in bankruptcy of the machinery company.

Lill was a creditor of the machinery company, and held as collateral security for his indebtedness a number of notes which had been given to the machinery company. Lill compounded his indebtedness with the trustee, by order of the bankruptcy court duly obtained in December, 1909, and accepted in satisfaction the collateral notes in his possession. For some reason the Gleason note was included in the list of securities. Lill paid the note and received it from the bank on March 6, 1909. At the time the machinery company was adjudged bankrupt the note belonged to the bank as a holder in due course. After the bank transferred it to Lill the note belonged to him, and consequently the trustee in bankruptcy had no title whatever to the instrument which he could pass to Lill. If in the adjustment of his affairs with the estate of the bankrupt Lill secured a release of whatever claim the trustee made to the note, it was no concern of the maker and the title acquired from the bank was not impaired.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the plaintiff.