**FIRST AMERICAN BANK & TRUST COMPANY, Plaintiff,**

**v.**

**B.G. PULLIN, Defendant-Appellee,**

**John Kyreakakis and Rosemary Kyreakakis, Defendants-Appellants.**

**No. 55126.**

Court of Appeals of Oklahoma, Division No. 2.

Feb. 2, 1982.

As Corrected Feb. 9 and 11, 1982.

Bill J. English, Norman, for defendants-appellants.

James E. Pence, Norman, for defendant-appellee.

BRIGHTMIRE, Judge.

Two primary questions are presented: (1) Was the maker of the delinquent promissory note sued on here an accommodation

maker? (2) If so, was it permissible to award him a judgment on his cross action against two accommodated endorsers for the amount of the judgment the plaintiff payee obtained against him?

## I

Plaintiff, First American Bank & Trust of Purcell, brought this action on several promissory notes made by defendant B.G. Pullin, a long-time farmer and rancher, and John and Rosemary Kyreakakis who had endorsed the notes. Pullin entered an appearance in the case but the Kyreakakises did not and the bank never sought issuance of summons for them. Pullin, however, filed a cross-action against the Kyreakakises as third party defendants and served summons on them in Somerset, New Jersey, by registered mail and later by having a Union County sheriff serve them personally. He alleged merely that they endorsed the unpaid notes and that if judgment were to be rendered against him, he wanted judgment over against the Kyreakakises for the same amount. The court entered a partial judgment against Pullin on November 14, 1978, for $141,101.94 with interest at 10 percent per annum but vacated it February 1, 1979.

Thereafter the Kyreakakises made a special appearance, later filed a general demurrer and finally answered Pullin's allegations by stating they did not know whether they were true or not and denied endorsing the notes for a valuable consideration or agreeing to pay them.

In October, 1979, Pullin filed an amended answer and cross petition against the bank in which he admitted he executed the notes in question but that he did so without receiving any consideration. He further stated that 826 head of cattle, pledged as security for the notes, were wrongfully disposed of by the plaintiff bank and asked for judgment discharging him from liability on the obligations. In his cross petition Pullin said he was involved in a joint cattle venture with defendants Kyreakakises; that plaintiff knew this and that the cattle mentioned in his answer were converted by

the Kyreakakises with the consent of plaintiff and he is therefore entitled to judgment against the bank for $153,000 actual damages and $200,000 punitive damages. At the same time Pullin filed an amended cross petition against the Kyreakakises alleging generally the same things he did in the bank pleading. The Kyreakakises denied these allegations and the case went to trial on these issues.

January 31, 1980, the court entered the following judgment in the case. He found that Pullin signed the notes as an accommodation maker for a fee of $3,500. He also found that there existed no joint venture and the proceeds of the notes were intended by the parties to be used by the Kyreakakises for the purchase of 826 head of cattle. The latter did buy the cattle for $141,000 but later sold them for $83,041.40 which was paid to plaintiff on the notes. The court also found plaintiff received another $12,784.53 toward payment of the notes in connection with a Kansas lawsuit.

As a consequence the court awarded the bank a judgment against Pullin for the balance due on the notes ($141,101.94 plus interest less $95,825.93) plus $14,883.50 for attorney fees and expenses. And secondly, he gave Pullin judgment on his cross petition against the Kyreakakises for the amount he granted plaintiff against Pullin.

## II

The Kyreakakises' first contention is that Pullin's allegation that a joint venture existed between the parties is unsupported by evidence.

We agree but find it difficult to understand why appellants spent so much time on this conclusion (the argument covers half of their 26 page brief) in view of the fact the court did not find a joint venture existed. Instead the court found that Pullin was an accommodation maker—a conclusion the Kyreakakises find untenable— and thus primarily liable for the whole loss.

## III

The remaining questions may be stated thus: whether the court was justified in

finding that Pullin was an accommodation maker and if so, whether an evidentiary foundation was laid for granting Pullin a judgment against the Kyreakakises.

█ We have no trouble at all with the finding. In fact the evidence is such that one could hardly reach any conclusion other than that Pullin signed the notes for the purpose of enabling the Kyreakakises to obtain the funds they received. True, the parties handled the transaction rather haphazardly in a number of respects but when the evidence is considered as a whole it seems obvious to us that the Kyreakakises needed funds to buy some cattle and used Pullin's credit to obtain them.[1]

What, then, is the consequence of Pullin's accommodation maker status? By statute the accommodating party is not liable to the party accommodated. With regard to the rights of the accommodator, however, the statute says that "if he *pays* the instrument [he] has a right of recourse on the instrument against" the one accommodated.[2] The term "pay" is a crucial one and aligns our law harmoniously with the long accepted general rule that payment is a condition precedent to an accommodator's right of recovery.[3] An unsatisfied judgment against him in favor of the promisee does not satisfy the condition.[4] The underlying rationale is that the accommodation maker is in legal theory a surety for the accommodated party—the principal—and a surety has no cause of action against the principal until the surety actually pays the obligation because it is the payment by, not the liability of, the surety that begets an implied promise of the principal to reimburse the surety for what he paid.

█ Here there is no evidence that Pullin has paid the obligation, hence a judgment in his favor against the Kyreakakises is premature and is vacated.

We think, however, that since the case has been fully tried with all affected parties before the court, justice will be served, and certainly the administration of justice facilitated, by a modification of the bank's judgment to include a judgment against the Kyreakakises for the same amount awarded against Pullin coupled with the direction that once Pullin satisfies the bank's judgment against him, he becomes subrogated to the bank's judgmental rights against the Kyreakakises. The bank's judgment is modified accordingly.

BOYDSTON, P.J., and BACON, J., concur.

---

1. "An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." 12A O.S.1971 § 3–415(1).

2. Emphasis added. 12A O.S.1971 § 3–415(5).

3. *Lill v. Gleason,* 92 Kan. 754, 142 P. 287 (1911). See also other cases cited in 36 ALR 548, 586.

4. *Mosely v. Armstrong,* Ky., 3 T.B.Mon. 287 (1826).