9 F.3d 871
 24 Bankr.Ct.Dec. 1490, Bankr. L. Rep. P 75,513,
22 UCC Rep.Serv.2d 291
 In re ROBINSON BROTHERS DRILLING, INC. and Robinson Brothers
Drilling Company, Debtors.
ABB VECTO GRAY, INC., formerly known as Gray Tool Company, Appellant,
v.
FIRST NATIONAL BANK OF BETHANY, OKLAHOMA, Global Fluids,
Inc., Halliburton Company, J.D. Hodges, ITT Commercial
Finance Corporation, Lor, Inc., Manufacturers Hanover
Leasing Corp., Ponder Fishing Tools, Inc., Vinson Supply
Company, Defendants,
and
Harold G. Lowrey, Trustee-Appellee.
 No. 93-6012.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 5, 1993.
 
 Robert N. Sheets of Phillips McFall McCaffrey McVay & Murrah, Oklahoma City, OK, for appellant.
 Gary L. Morrissey of Krasnow, Williams & Morrissey, Oklahoma City, OK, for trustee-appellee.
 Before LOGAN and BRORBY, Circuit Judges, and KANE, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 ABB Vecto-Gray, Inc. (ABB) appeals from a district court order affirming a judgment of the bankruptcy court which held that certain prepetition payments made to ABB were voidable preferences under 11 U.S.C. Sec. 547(b). The Trustee recovered the payments pursuant to 11 U.S.C. Sec. 550(a). On appeal from the district court's order, we review the bankruptcy court's factual findings for clear error and its legal determinations de novo, see Clark v. Valley Federal Sav. & Loan Ass'n (In re Reliance Equities, Inc.), 966 F.2d 1338, 1340 (10th Cir.1992), and reverse for the reasons explained below.[1]
 
 
 2
 * In January 1983, debtors and debtors' president, J.D. Hodges, jointly executed a note payable to ABB. In return for the note, and an additional cash payment from debtors, ABB dismissed a lawsuit then pending against both parties. Debtors made two payments on the note, totaling less than half of its face amount, before commencement in July 1983 of an involuntary Chapter 7 proceeding, later converted to Chapter 11. Because these payments were made more than ninety days but less than one year before the bankruptcy filing, the Trustee brought this adversary proceeding to set them aside under Sec. 547(b)(4)(B). That section permits avoidance of preferential transfers within this time frame if the creditor benefited was an insider. Although ABB was an outsider, the Trustee alleged that debtors' obligation to ABB had been guaranteed by Hodges, an insider, when he co-made the note. On a prior appeal, we held that if Hodges served as guarantor or surety for an obligation on which debtors made prepetition payment, he could fulfill the role of benefited insider-creditor required by the statute. See Manufacturers Hanover Leasing Corp. v. Lowrey (In re Robinson Bros. Drilling, Inc.), 892 F.2d 850 (10th Cir.1989) (adopting opinion in Lowrey v. First Nat'l Bank (In re Robinson Bros. Drilling, Inc.), 97 B.R. 77 (W.D.Okla.1988)); accord Ray v. City Bank & Trust Co. (In re C-L Cartage Co.), 899 F.2d 1490, 1494 (6th Cir.1990); Levit v. Ingersoll Rand Fin. Corp., 874 F.2d 1186, 1200-01 (7th Cir.1989).
 
 
 3
 Following that earlier decision, the parties' dispute focused upon the proper characterization of Hodges' legal status with respect to the obligation owed to ABB and, thus, the nature of his relationship to debtors. In order to avoid a preferential transfer, Sec. 547(b)(4)(B) requires a benefit to an insider-creditor. Therefore, the critical issue is whether Hodges is merely a co-maker who, under the circumstances here, has no contribution claim against debtors, as ABB maintains, or, as the Trustee insists, is an accommodation maker, i.e., a surety who lent his name to debtors on the note, and consequently has a subrogation/reimbursement claim against them, see Okla.Stat. tit. 12A, Sec. 3-415(1), (5) (1961) (effective Jan. 1, 1963) (current version at id. Sec. 3-419(a), (e) (1991)); King v. Finnell, 603 P.2d 754, 757 (Okla.1979). The latter claim, even though contingent, would be sufficient to confer creditor status on Hodges for purposes of Sec. 547(b)(4)(B) under this court's earlier decision. See Lowrey, 97 B.R. at 80, 82; accord Ray, 899 F.2d at 1493; Levit, 874 F.2d at 1190.
 
 
 4
 The issue of Hodges' status as an accommodation party raises questions of both law and fact. Initially, we must determine how Oklahoma law defines accommodation parties and distinguishes them from other co-makers or endorsers. We then apply the facts in the record to that law to determine whether the Trustee established that Hodges was an accommodation party.
 
 II
 
 5
 For most of this century, Oklahoma law sharply distinguished an accommodation maker from a simple co-maker by the absence of personal benefit derived from the instrument signed for the benefit of another: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." Okla.Stat. tit. 48, Sec. 76 (1951); Okla.Stat. Sec. 11323 (1931); Okla.Stat. Sec. 7699 (1921); Rev.L. Sec. 4079 (1910); see also Unger v. Willibey, 141 Okl. 254, 284 P. 854, 855 (1929) ("The mode of distinguishing between a principal and a surety is by inquiring whether he who claims to stand in the relation of surety did or did not derive a benefit from the contract.").
 
 
 6
 Oklahoma law in effect at the time the facts of this case occurred defined an accommodation party simply as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it," Okla.Stat. tit. 12A, Sec. 3-415(1) (1961), without any reference to the matter of benefit. The state commentary to the statute explains the omission:
 
 
 7
 The Commercial Code provision is more concise than former 48 Okl.St.Ann. Sec. 76, and is a little broader, for it includes one who signs as surety.
 
 
 8
 The Commercial Code omits the words "without receiving value therefor." Most courts have ignored this apparent requirement, and have held that one who signs as a paid accommodation party is controlled by the provisions of the NIL [i.e., the Negotiable Instruments Law, including Okla.Stat. tit. 48, Sec. 76 (1951) ].
 
 
 9
 Okla.Code Comment to Sec. 3-415(1) (1961). Oklahoma has since adopted the revised Uniform Commercial Code (UCC) section relating to accommodation parties, which states the distinction relevant to the instant case more precisely:
 
 
 10
 If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation".
 
 
 11
 Okla.Stat. tit. 12A, Sec. 3-419(a) (1991) (emphasis added).
 
 
 12
 We do not regard the altered language in the 1961 enactment as making any change in the Oklahoma law relevant to the issue before us. Although a party lending his or her name to another on an instrument is still an accommodation maker despite being paid for rendering such service, it does not declare that one may remain an accommodation maker despite being a direct beneficiary of the instrument itself. Receiving the direct benefit of the instrument itself is contrary to the basic principle of lending one's name or credit to another (rather than using it for oneself), while accepting payment for assuming the role of surety is, by its own terms, obviously consistent with surety status. See 1 White & Summers Sec. 13-14 at 660-61 & n. 6 (3d ed. 1988) (recognizing that "receipt of proceeds from the instrument or other direct benefit would generally be inconsistent with accommodation status [under Sec. 3-415(1) ]," but also noting "that the surety may undertake his obligation gratuitously or for compensation without affecting his status as a surety."). The Oklahoma cases while the 1961 provision was in effect are consistent with this view. See, e.g., First Am. Bank & Trust Co. v. Pullin, 720 P.2d 744, 746 (Okla.Ct.App.1982); Wilmot v. Central Okla. Gravel Corp., 620 P.2d 1350, 1352, 1356 (Okla.Ct.App.1980); Beneficial Fin. Co. v. Marshall, 551 P.2d 315, 316-17 (Okla.Ct.App.1976).
 
 
 13
 Thus, we hold the applicable Oklahoma law is that, absent some special indication of status on the instrument,[2] to be deemed an accommodation party one must lend his or her name to another on an instrument, for a fee or otherwise, without being the direct beneficiary of the value given for the instrument. We turn now to the facts to evaluate whether Hodges met this test.
 
 III
 
 14
 Under 11 U.S.C. Sec. 547(g), a trustee seeking to avoid an allegedly preferential transfer under Sec. 547(b) "has the burden of proving by a preponderance of the evidence every essential, controverted element resulting in the preference." 4 Collier on Bankruptcy p 547.21 at 547-93 (15th ed. 1993); see, e.g., Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.), 990 F.2d 551, 555 (10th Cir.1993) (trustee's avoidance claim rejected because "she did not satisfy her burden of proof under Sec. 547(b)(5)"). Consequently, the Trustee bears the burden of demonstrating that Hodges was a creditor within the meaning of Sec. 547(b)(4)(B). To do this the Trustee must show Hodges lent his name to debtors on the note given to ABB and did not receive a direct personal benefit in return for the note.
 
 
 15
 ABB contends Hodges derived precisely the same benefit in return for execution of the note that debtors obtained--dismissal of a pending adverse legal claim. Oklahoma law recognizes that the settlement of a legitimate legal controversy, whatever its merits, provides a valid and enforceable benefit to the settling parties. See, e.g., Taylor v. Taylor, 389 P.2d 622, 628 (Okla.1963) (citing cases); accord Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 856 (1st Cir.1987) (citing 15A Am.Jur.2d Compromise & Settlement Sec. 17 (1965)). The Trustee responds that Hodges' alleged settlement benefit is specious, because he actually had no liability exposure in the ABB lawsuit.
 
 
 16
 The district court held in favor of the Trustee based on the stipulated facts that debtors owed ABB the sum sought in the settled action and debtors had made the two initial payments alone. See App. tab F at 84; see also id. tab C at 54. Although these facts confirm debtors' role in, and benefit obtained from, the settlement, they do not negate the evident role played, and benefit derived, by Hodges. If debtors' conceded obligation to ABB were exclusive of any concurrent liability on Hodges' part, these stipulations would fully support the district court's conclusion. However, there are no other facts cited by the Trustee or contained in the record indicating such exclusivity. The pertinent record, consisting of the settlement letter and note, excerpts from Hodges' deposition, and the pretrial order, contain nothing to indicate the particular nature of ABB's claim against Hodges, let alone establish the illegitimacy of that claim. The record reflects only the operative documents themselves and Hodges' testimony acknowledging that ABB was asserting liability against him individually as well as against debtors, see id. tab K at 125.
 
 
 17
 It is important to recognize that the Trustee not only had to satisfy, in general terms, the burden of proof imposed by Sec. 547(g), but, given the particular circumstances involved here, also present evidence sufficient to enable the court to look behind an executed settlement and declare that the underlying claim asserted against a settling party lacked a good-faith legal foundation. See Taylor, 389 P.2d at 628. This the Trustee did not do. We therefore hold that the Trustee failed to establish his entitlement to the avoidance sought under Sec. 547(b)(4)(B). The judgment entered in the Trustee's favor must, accordingly, be REVERSED.
 
 
 
 *
 The Honorable John L. Kane, Jr., Senior United States District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 Under circumstances not pertinent here, an instrument may bear an express or graphic indication of a party's accommodation status thereon, see Okla.Stat. tit. 12A, Sec. 3-415(4) (1961); see also id. Sec. 3-419(c) (1991); see generally 1 White & Summers Sec. 13-14 at 659-60 (3d ed. 1988)