*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b).  See also 6th Cir. BAP LBR 8010-1(c).*

**File Name:  09b0001n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   ELIZABETH ANN DIRKS, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| RUTH A. SLONE, Trustee, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | No. 08-8031 |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY DIRKS, | ) | |
| | ) | |
| Defendant - Appellee. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Dayton.
Bankruptcy Case No. 06-30529; Adv. No. 06-3295.

Argued:  November 18, 2008

Decided and Filed:  January 16, 2009

Before: McIVOR, PARSONS, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:**  Stephen D. Brandt, Dayton, Ohio, for Appellant.  Jeffrey R. McQuiston, LAW OFFICE, Dayton, Ohio, for Appellee.  **ON BRIEF:**  Stephen D. Brandt, Dayton, Ohio, for Appellant.  Jeffrey R. McQuiston, LAW OFFICE, Dayton, Ohio, for Appellee.

1

---

## OPINION

---

MARCI B. McIVOR, Bankruptcy Appellate Panel Judge. The chapter 7 trustee appeals the bankruptcy court's order granting judgment in favor of the defendant on the trustee's preferential and fraudulent conveyance claims. For the following reasons, we AFFIRM the decision of the bankruptcy court.

## ISSUES ON APPEAL

The issues presented in this appeal are:

(1) whether the bankruptcy court violated the *Rooker-Feldman* doctrine, the Full Faith and Credit Act, 28 U.S.C. § 1738, and the parol evidence rule by concluding that it was not bound by a marital debt provision in a state court judgment of divorce, and by considering evidence inconsistent with the state court orders;

(2) whether the bankruptcy court erred in dismissing the chapter 7 trustee's fraudulent transfer claim brought under § 548 of the Bankruptcy Code and the Ohio Uniform Fraudulent Transfer Act, Ohio Revised Code § 1336.01, *et seq*., based on the court's finding that the debtor received reasonably equivalent value in exchange for her transfer of her interest in the marital residence to her former husband; and

(3) whether the bankruptcy court erred in concluding that the Debtor's transfer of her interest in the marital residence was not "on account of an antecedent debt" and, consequently, not a preference under § 547 of the Bankruptcy Code.

## JURISDICTION AND STANDARD OF REVIEW

The Sixth Circuit Bankruptcy Appellate Panel has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and neither party timely elected to have this appeal heard by the district court. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). An order is final if it "ends

2

the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations and internal quotation marks omitted). The bankruptcy court's judgment resolved the underlying adversary proceeding on its merits and is a final, appealable order. *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321, 325 (B.A.P. 6th Cir. 2007).

The bankruptcy court's conclusions of law are reviewed *de novo*. *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). The court's findings of fact are reviewed under the clearly erroneous standard. *In re DSC, Ltd.*, 486 F.3d at 944. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

## FACTS

On August 15, 2003, Elizabeth Ann Dirks ("Debtor") and her then husband, Timothy Dirks ("Defendant"), purchased real property located in Miamisburg, Ohio for their marital residence, taking title in both their names. On May 21, 2004, the Defendant filed for divorce from the Debtor in the Domestic Relations Division of the Common Pleas Court of Montgomery County, Ohio ("Domestic Relations Court"). The parties' only significant marital asset was their residence, which was stipulated to have a value of $183,000, secured by a joint mortgage debt in the amount of $134,896.23 owed to Washington Mutual Bank. The parties' remaining marital debt totaling $15,096.29 was unsecured, with $11,473.78 owed by the Defendant and the remaining $3,622.51 owed by the Debtor.

On October 18, 2005, the Domestic Relations Court filed a Decision, noting the parties' agreement that the Defendant would have 30 days to buy out the Debtor's interest in the marital residence and remove her name from the mortgage. The Decision further provided that if the

3

Defendant was unable to refinance the mortgage or the parties were unable to reach an agreement, then the property would be listed with a specified real estate agent and the net proceeds divided upon sale. Additionally, the Decision stated the agreement of the parties that "[e]ach party shall be responsible for debts in his or her own name unless otherwise agreed." (Appellant's Ape. at 86.)

On October 21, 2005, the Domestic Relations Court entered an agreed order providing: "[Defendant] is specifically authorized to refinance the mortgage on [the marital residence] and to pay [Debtor] the sum of $11,500, as agreed between the parties, for her interest in said real estate, and [Debtor] shall execute and deliver a Quit-Claim Deed as to said real estate concurrent with said refinancing." (Appellant's Ape. at 89.) As contemplated by the terms of the order, the Defendant subsequently refinanced the mortgage on the Miamisburg property and on October 25, 2005, gave the Debtor a check in the amount of $11,500, with the Debtor in return delivering a quit claim deed to the Defendant transferring her interest in the marital residence. The Defendant recorded the deed on November 7, 2005. The Defendant's refinanced loan was in the amount of $167,000, from which was disbursed $134,896.23 to Washington Mutual, $11,500 to the Debtor, $9,150 to Chase Bank,[1] and $6,793 to Capital One Bank.[2] After settlement charges were deducted, Defendant received $1,325.58 from the refinanced loan.

On November 22, 2005, the Domestic Relations Court entered a final judgment of divorce, which included the following provision:

> The parties represent there are no joint debts. Each party shall be responsible for and timely pay any debts in his or her own name. Neither party shall incur any debt in the name of the other.

(Appellant's Ape. at 81.)

---

[1] The $9,150 disbursed to Chase Bank paid the balance owed on the Defendant's automobile loan in full. At trial, the Defendant testified that he had to pay his vehicle loan in full in order to qualify for the refinanced loan.

[2] The $6,793 payment to Capital One paid in full the Defendant's portion of the unsecured marital debt, which had been consolidated on the Capital One credit card.

Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 16, 2006. After being appointed chapter 7 trustee, Ruth A. Slone ("Trustee") filed an adversary complaint against the Defendant to avoid and recover the transfer of the Debtor's interest in the Miamisburg property pursuant to §§ 544, 547, 548 and 550 of the Bankruptcy Code and the Ohio Uniform Fraudulent Transfer Act. A trial was held on March 27, 2008, at the conclusion of which the bankruptcy court read its opinion into the record. As to the Trustee's preference claim, the court concluded that Debtor's transfer of her interest in the marital residence was an equitable property division, rather than a transfer on account of an antecedent debt as required for a preferential transfer under 11 U.S.C. § 547(b)(2). To the extent, as argued by the Trustee, that the transfer could be deemed to be on account of an antecedent debt created by the agreement between the Debtor and the Defendant that she would sell her interest for $11,500, the court concluded that the transfer was made in exchange for contemporaneous new value pursuant to 11 U.S.C. § 547(c)(1) and, therefore, excepted from avoidance.

Regarding the Trustee's fraudulent transfer claim, the court observed that in determining whether reasonably equivalent value was given for the transfer, it was "not bound by the Domestic Relations Court's determination as to who is responsible for what debt." (Appellant's Ape. at. 68-69.) Rather, the court noted that it "must simply compare the value of the property transferred with that of the property received." (Appellant's Ape. at 69.) In order to arrive at the value of the property transferred by the Debtor, the court concluded that it was proper to reduce the payoff amount by one-half of the marital debt since these liabilities were incurred by the parties during their marriage. The court also deducted the cost of a hypothetical real estate commission, i.e., 7% of the stipulated value of the property. Under the court's calculations, starting with a value of $183,000, deducting the mortgage of $134,896, a real estate commission of $12,810, and the marital debt of $15,096, left a balance of $20,198, with the Debtor's one-half interest being $10,099. Based on this calculation and observing that the terms of the divorce were negotiated at arm's length with the assistance of competent attorneys, the bankruptcy court concluded that the $11,500 received by the Debtor for the transfer of her interest in the property was reasonably equivalent to the value of the interest transferred.

5

An order was entered in favor of the Defendant on all claims on April 1, 2008. It is from this order that the Trustee appeals.

## DISCUSSION

On appeal, the Trustee argues that by ignoring the orders entered by the Domestic Relations Court, and by considering evidence inconsistent with those orders, the bankruptcy court violated the *Rooker-Feldman* doctrine,[3] the Full Faith and Credit Act, and the parol evidence rule. The Trustee also contends that the bankruptcy court erred in concluding that the Debtor's transfer was not a preference or a fraudulent conveyance under the Bankruptcy Code, and was not a fraudulent transfer under the Ohio Uniform Fraudulent Transfer Act.

## The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a jurisdictional mandate that provides that lower federal courts lack subject matter jurisdiction to review appeals from state court judgments. The doctrine is derived from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983), in which the losing parties in state court actions turned to federal court for relief from the state court judgments, in effect seeking to "appeal" their state cases to a federal district court. *Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 371 (6th Cir. 2008). The doctrine is a narrow one, confined to cases out of which the name arises. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517 (2005). The *Rooker-Feldman* doctrine does not bar federal courts from deciding an independent claim, even if doing so requires the federal court to deny a legal conclusion of the state court. *Sill v. Sweeney* (*In re Sweeney*), 276 B.R. 186, 195 (B.A.P. 6th Cir. 2002; *see also In re Hamilton*, 540 F.3d at 372 ("[T]he Rooker-Feldman doctrine provides no protection in areas where Congress has explicitly endowed federal courts with jurisdiction.").

---

[3] The Trustee argued in her trial brief filed in the bankruptcy court that the *Rooker-Feldman* doctrine had no applicability to the present case.

The *Rooker-Feldman* doctrine has no application in the present appeal. Neither the Debtor nor the Defendant who were the parties to the divorce action sought federal court review of any judgment or order issued by the Domestic Relations Court. The Trustee was not a party to the state court action, and even if she had been, by her own admission she did not seek modification in the bankruptcy court of any Domestic Relations Court judgment or order. The bankruptcy court did not sit as a court of appeals for the state court, but instead ruled on an independent legal issue not addressed in the state court proceedings. The *Rooker-Feldman* doctrine did not deprive the bankruptcy court of jurisdiction to analyze independently the matters brought before it by the Trustee.

## Full Faith and Credit

The Full Faith and Credit statute requires federal courts to give state court judgments the same preclusive effect they would be given by the rendering state. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1332 (1985). In the instant appeal, the preclusive effect in federal court of the state court judgment of divorce is determined by Ohio law.

Ohio law recognizes both issue and claim preclusion. Claim preclusion requires proof of the following elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 703-04 (6th Cir. 1999). Issue preclusion, on the other hand, applies when a fact or issue:

> (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom issue preclusion is asserted was a party in privity with a party to the prior action.

*Id.* at 704 (quoting *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994)).

7

Under Ohio law, claim preclusion requires an identity of parties, i.e., the parties to the subsequent action must be identical to or in privity with the parties to the original suit. *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Ed.*, 861 N.E.2d 163, 175 (Ohio 2006). In this case, the Trustee was neither a party to the state court divorce proceedings nor was she in privity with the Debtor in the state court proceedings. *In re Fordu*, 201 F.3d at 704-06 (the trustee in bankruptcy represents the interests of creditors and was not in privity with the debtor in debtor's state court marital dissolution proceeding). Thus, the principles of claim preclusion do not apply.

With respect to issue preclusion, Ohio law requires that a fact or issue must have been actually and necessarily litigated in the prior action. In the present appeal, the parties agreed to the property settlement provisions in the divorce decree and did not litigate those provisions. Even if they had litigated those provisions, the standard used by bankruptcy courts to determine whether a transfer was supported by reasonably equivalent value is not the standard used by Ohio domestic relations courts in making property divisions. *Id.* at 707-08. Issue preclusion bars the relitigation of an issue which was actually and necessarily litigated in an earlier action. The issue addressed by the Domestic Relations Court was not the same as the issue determined by the bankruptcy court. Accordingly, neither issue nor claim preclusion apply in the present case; therefore, the bankruptcy court was not obligated to afford full faith and credit to the state court judgment of divorce.

### The Parol Evidence Rule

The Trustee asserts that the bankruptcy court violated the parol evidence rule by considering extrinsic evidence that contradicted the express terms of the judgment of divorce. The parol evidence rule is one of substantive law designed to protect the integrity of final, written agreements. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 455 (6th Cir. 2005). The Sixth Circuit summarized the rule as follows:

> The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the "integration"), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the

8

writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.

*Id*. at 455-56 (quoting *Galmish v. Cicchini*, 734 N.E.2d 782, 788-89 (Ohio 2000)).

Ohio law controls the parol evidence question in the instant appeal. Under Ohio's parol evidence rule:

The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning.

*Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987) (internal citation omitted).

The parol evidence rule has no applicability in the present case. The parol evidence rule would apply if the Trustee's claims required the bankruptcy court to interpret the judgment of divorce or rule on whether the judgment of divorce complied with state law. However, the Trustee's claims required the bankruptcy court to determine whether the Debtor's transfer of her interest in property to the Defendant for $11,500 was either a preference or a fraudulent transfer under the Bankruptcy Code. The bankruptcy court could admit any testimony that was probative on these issues. The bankruptcy court did not err in considering evidence that supplemented the terms of the state court judgment of divorce.

## Preferential Transfer - 11 U.S.C. § 547(b)

The Trustee also argues that the bankruptcy court committed reversible error in holding that the Debtor's transfer of her interest in the marital residence was not a preferential transfer under § 547(b) of the Bankruptcy Code which provides:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;

9

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

> (A) on or within 90 days before the date of the filing of the petition; or

> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

> (A) the case were a case under chapter 7 of this title;

> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee must establish all five statutory elements of a preference by a preponderance of the evidence before the transfer may be avoided. 11 U.S.C. § 547(g); *ABB Vecto Gray, Inc. v. First Nat'l Bank* (*In re Robinson Bros. Drilling, Inc.*), 9 F.3d 871, 874 (10th Cir. 1993).

The bankruptcy court held that the Debtor's transfer, which the court concluded was "an equitable division of property under the divorce decree," did not meet the requirement of § 547(b)(2) that the transfer be "for or on account of an antecedent debt owed by the debtor before such transfer was made." The Trustee argues that the bankruptcy court erred in this conclusion. According to the Trustee, upon the filing of the divorce complaint, the Defendant had a contingent claim against the Debtor for a portion of the parties' marital debt. The Trustee states that this contingent claim became "liquidated" when the parties reached an agreement as to the terms of the Debtor's sale of her interest. Alternatively, the Trustee asserts that agreement by the parties was the antecedent debt.

The Bankruptcy Code does not define the phrase "antecedent debt," but the term "debt" is defined to mean liability on a claim. 11 U.S.C. § 101(12). "Claim" is defined in § 101(5) of the Code to mean the right to payment or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. A debt is "antecedent" if it was incurred before the

transfer took place. *Whittaker v. BancOhio Nat'l Bank* (*In re Lamons*), 121 B.R. 748, 750 (Bankr. S.D. Ohio 1990).

The Panel does not need to address the issue of whether the mere filing of a divorce complaint creates a contingent obligation between the divorcing parties. There is no indication in the record that the Debtor quit claimed her interest in the marital property to satisfy an antecedent debt or to settle any claim that the Defendant had against her.[4] Rather, all the orders of the Domestic Relations Court indicated that the Debtor was simply selling her interest in the marital residence to the Defendant, in lieu of their jointly selling the property and splitting the proceeds. The Trustee admits as much in her Appellant's brief, wherein she observes that the October 21, 2005 order "facilitated the completion of the parties' agreement whereby defendant purchased Debtor's interest in the marital residence." The Domestic Relations Court orders clearly gave the Debtor the option of selling the property and splitting the proceeds if the parties were unable to agree on a price. Thus, the logical inference from the fact that the Debtor and the Defendant agreed upon a price whereby the Debtor would sell her interest to the Defendant is that she believed she was receiving as much or more than she would receive in a sale to a third party. Rather than a transfer on account of an antecedent debt, the transfer was a sale of a property interest in exchange for the payment of $11,500, the sum that the parties agreed upon as the value of her interest. Accordingly, we find no error in the bankruptcy court's conclusion that the transfer at issue was not on account of an antecedent debt and that, therefore, the Trustee failed to establish all of the elements of a preference under § 547(b). Because no preference was established, the bankruptcy court's findings on the contemporaneous exchange for new value defense under § 547(c)(1) need not be reviewed.

---

[4] The record does contain a letter dated March 4, 2005, from the Defendant's attorney to the Debtor's attorney, setting forth an offer for the Defendant to pay the Debtor the sum of $10,180.02 for her interest in the marital residence. The letter indicates that the offered price had been reduced by the sum of $1,454.48, the total of two checks allegedly forged by the Debtor. There is no subsequent letter in the record accepting or rejecting this offer or evidencing any type of settlement between the parties. The attorney for the Debtor testified that he could not recall how the $11,500 sum was arrived at, and denied that the amount was a "sweetheart deal" that gave the Defendant a disproportionate share of the assets.

**Fraudulent Transfer - 11 U.S.C. § 548(a)(1)(B) and Ohio Rev. Code § 1336.04(A)(2)(a) and (b)**

The Trustee's final argument on appeal is that the Debtor received less than reasonably equivalent value in exchange for the transfer of her interest in the marital property in violation of the Bankruptcy Code and the Ohio Uniform Fraudulent Transfer Act.

Section 548(a)(1)(B) of the Bankruptcy Code provides in pertinent part:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–

. . . .

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

Similarly, under the Ohio Uniform Fraudulent Transfer Act, the party attempting recovery under a constructive fraud theory must prove that the debtor transferred an interest in property for less than reasonably equivalent value in exchange for the transfer, and either (1) the debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. Ohio Rev. Code § 1336.04(A)(2)(a) and (b).

To determine reasonably equivalent value, the court first considers whether a debtor received any value for the exchange. *In re Wilkinson*, 196 Fed. Appx. 337, 341 (6th Cir. 2006). If value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered. *Id*; *see also In re Fordu*, 201 F.3d at 707-08 (the test used to determine whether a transfer was supported by reasonably equivalent value focuses on whether there is reasonable equivalence between the value of property surrendered and that which was received in exchange). Attention is paid to the value received by the debtor on the date of the transfer, not on the value

given by the transferee. *In re Wilkinson*, 196 Fed. Appx. at 341-42. The calculation of reasonably equivalent value is fact specific and, thus, the bankruptcy court's findings may be reversed on appeal only if clearly erroneous. *Id.* at 341. The methodology used in assessing value is an issue of law reviewed *de novo*. *Id.* at 342.

"Reasonably equivalent value" is not defined in the Bankruptcy Code, although "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). "[T]he debtor need not collect 'a dollar-for-dollar equivalent to receive reasonably equivalent value.'" *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997) (quoting *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1125-26 (5th Cir. 1993)). Both direct and indirect benefits are considered when evaluating reasonable equivalence. *Meeks v. Don Howard Charitable Remainder Trust* (*In re S. Health Care of Ark., Inc.*), 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004). Before indirect benefits may be considered, however, the value of the benefit must be tangible. *Id.*; *see also Dayton Title Agency, Inc. v. White Family Cos*. (*In re Dayton Title Agency, Inc.*), 292 B.R. 857, 874-75 (Bankr. S.D. Ohio 2003) (applying same principles under Ohio Fraudulent Transfer Act).

The Trustee contends that the bankruptcy court erred by dividing the marital debt in half and by subtracting a fictional real estate commission. The bankruptcy court reasoned in this regard that:

> The Court believes that it was proper to reduce the payoff amount due to the Debtor by one half of the marital debt since these liabilities were incurred by the parties during their marriage. By paying more than half of the marital debt Defendant conferred a benefit onto Debtor which benefit was adjusted by the equal division of the debt in the computation of the payoff amount.
>
> The Court also believes under the circumstances of this case, the deduction of a hypothetical real estate commission or sale cost is appropriate. The evidence reflects that the Debtor had the option of accepting the $11,500.00 offered by Defendant or subject the residence to sale with a split of the net proceeds. Debtor chose to accept the $11,500.00 rather than subject the residence to sale. This, in this Court's mind, was an acknowledgment that the Debtor recognized that her take home from any sale would have necessarily been lower if the residence was sold to recover the Defendant's and Debtor's interests in the Property due to incurring a real estate commission and other sale costs in selling the residence. Further, the Defendant and Debtor even agreed as to what real estate agent would be used to sell the residence.

> If the Trustee succeeded to the Debtor's interest in the residence, the only way the Trustee could recover the Debtor's interest in the property would have been to sell the property and incur sale costs, including a real estate commission. Thus, under the circumstances of this case, the Court finds the deduction of a hypothetical real estate commission or sale cost is appropriate in determining whether the Defendant conveyed reasonably equivalent value to the Debtor.

(Appellant's Ape. at 69-70.)

This Panel finds no error in the manner in which the bankruptcy court determined reasonably equivalent value. With respect to the bankruptcy court's deduction of one-half of the marital debt in determining the value of the Debtor's interest in the parties' residence, the marital debt was a joint obligation of both the Debtor and the Defendant even though the majority of the debts were incurred in the Defendant's name. *See Lemaster v. Lemaster*, 2005-Ohio-2513, 2005 WL 1207571, at *2 (Ohio App. May 20, 2005); *Myers v. Myers*, No. L-99-1168, 2000 WL 331573, at *3 (Ohio App. Mar. 31, 2000) (whether created by one or both spouses during marriage, marital debt is joint obligation of both). While undeniably the bankruptcy court's deduction was contrary to the Domestic Relations Court's orders that each party would be responsible solely for the debts in their name, as previously discussed, in *Fordu* the Sixth Circuit held that the bankruptcy court was not bound by the manner in which the domestic relations court allocated property in determining reasonably equivalent value under § 548(a)(1)(B).

Similarly, the bankruptcy court's deduction of a hypothetical real estate agent's commission was not erroneous. In determining reasonably equivalent value under § 548(a), the "proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors." *See In re Fordu*, 201 F.3d at 707 (quoting *Harman v. First Am. Bank* (*In re Jeffrey Bigelow Design Group, Inc.*), 956 F.2d 479, 484 (4th Cir. 1992)). If the transfer were to be set aside and the Debtor's interest in the realty brought back into her bankruptcy estate, that interest would have to be liquidated, with the additional expense of a realtor or an auctioneer reducing the net value to the estate. Accordingly, we find no error in this regard.

Considering all the facts and circumstances in this case, we conclude that the bankruptcy court's determination that the Debtor received reasonably equivalent value in exchange for her

14

transfer of her interest in the marital residence was not clearly erroneous. As noted by the court, the value given by Defendant was based on an arm's length negotiation, between parties who were represented by "very able and well respected, competent legal counsel." (Appellant's Ape. at 71.) *See Raleigh v. Haskell* (*In re Haskell*), No. 96 B 14602, 1998 WL 809520, at *8 (Bankr. N.D. Ill. Nov. 19. 1998) (arms length transaction is important element in determination of reasonable equivalence). In agreeing to the sale to the Defendant, the Debtor was able to quickly liquidate for cash her interest in the realty, without waiting on the vagaries of the real estate market. Also, the Debtor was released from any liability under the mortgage. When these indirect benefits are added to the actual cash payment received by the Debtor, and in light of the clearly erroneous standard of review, we are compelled to affirm the bankruptcy court on this issue.

## CONCLUSION

Based on the foregoing, the Panel AFFIRMS the bankruptcy court's order granting judgment in favor of the Defendant on the Trustee's preferential and fraudulent conveyance claims.

15