NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0590n.06
Filed: August 17, 2006

**No. 05-5744**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

In re: WALLACE G. WILKINSON, Jr.

                   Debtor

_____

CHARLES J. LISLE, as Trustee of the Trust
established under the Amended Liquidating
Plan of Reorganization of the Official
Committee of Unsecured Creditors for the
Debtor Wallace G. Wilkinson,

                   Appellant,

v.

JOHN WILEY & SONS, INC.,

                   Appellee.

On Appeal from the
United States District
Court for the Eastern
District of Kentucky

Before: DAUGHTREY and COLE, Circuit Judges, and GRAHAM,[*] District Judge

**OPINION**

GRAHAM, District Judge.

       This bankruptcy action presents the question of whether a $1 million payment made

by Debtor Wallace Wilkinson to Defendant John Wiley & Sons, Inc. was a fraudulent

---

[*] The Hon. James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

transfer under 11 U.S.C. §548(a). Wilkinson made the payment out of his personal account to pay for books being shipped by Wiley, a book publisher, to Wallace's Bookstore, Inc. ("WBI"). Wilkinson was the majority shareholder of WBI. At the time of the payment, Wilkinson owed a substantial debt to WBI, and this debt was reduced by $1 million as a result of the payment to Wiley.

The Trustee of Wilkinson's estate filed an adversary proceeding against Wiley to recover the $1 million payment as a fraudulent transfer. The bankruptcy court held that the payment was not fraudulent because Wilkinson received "reasonably equivalent value" in exchange for the payment, namely, Wilkinson received a dollar-for-dollar reduction in his debt to WBI. *See* 11 U.S.C. § 548(a)(1)(B)(i). On appeal, the district court affirmed the bankruptcy court's decision.

The Trustee argues that the bankruptcy court and district court erred in concluding that Wilkinson received reasonably equivalent value. The Trustee submitted an expert opinion purporting to show that the payment had a fair market value benefit of no more than $118,300 to Wilkinson's creditors. Because the courts below properly rejected the expert's valuation, we AFFIRM.

## I. BACKGROUND

WBI and its corporate affiliates operated campus bookstores and sold college textbooks throughout the United States. WBI regularly purchased textbooks from Wiley. In late 2000, WBI placed a $1.2 million order for textbooks, but Wiley refused to ship the books because WBI had an outstanding balance of $2.4 million. Wanting to receive the books in time for the upcoming semester, Wilkinson negotiated the shipment of the $1.2

2

million order in exchange for $1 million to be paid by Wilkinson. On January 4, 2001, Wilkinson wired $1 million dollars from his personal account to Wiley, who shipped the textbooks to WBI upon receipt of the wire transfer.

It is undisputed that both WBI and Wilkinson were insolvent on the date of the transfer. It is also undisputed that Wilkinson owed WBI $60 million around this time. The $1 million paid by Wilkinson to Wiley on January 4, 2001 was credited to WBI's account with Wiley. Both WBI's and Wilkinson's accountings showed a $1 million dollar credit to Wilkinson against his debt to WBI for the $1 million dollar payment to Wiley.

On February 5, 2001, Wilkinson's personal creditors filed an involuntary petition for bankruptcy against Wilkinson, who in turn filed a voluntary petition on February 12, 2001. WBI and its affiliates filed voluntary Chapter 11 bankruptcy petitions shortly thereafter. The bankruptcy court confirmed a liquidating plan of reorganization on December 14, 2002 in the Wilkinson bankruptcy proceedings. The plan authorized the Trustee to pursue claims for the benefit of the estate.

On December 6, 2002, and January 9, 2003, the bankruptcy court approved a settlement of claims and disputes between Wilkinson and WBI. Under the settlement, WBI's $60 million claim against Wilkinson was reduced to an unsecured claim for $31 million.

On January 31, 2003, the Trustee brought an adversary proceeding against Wiley. The Trustee alleged that Wilkinson's $1 million payment to Wiley was fraudulent under the Bankruptcy Code, 11 U.S.C. § 548, and applicable Kentucky law, Ky. Rev. Stat. § 378.020. The Trustee sought to recover the transfer under 11 U.S.C. § 550.

Wiley and the Trustee each filed motions for summary judgment. After a hearing on

3

the motions, the bankruptcy court granted summary judgment to Wiley on all counts and dismissed the action. The bankruptcy court found that the transfer was not fraudulent because Wilkinson received reasonably equivalent value in exchange for his $1 million payment to Wiley. Stating that "value" is provided when a debtor receives either a direct or indirect economic benefit, the bankruptcy court found that Wilkinson received a direct benefit in the form of a dollar-for-dollar reduction in his debt to WBI.

The Trustee had submitted an insolvency report prepared by his expert, Jane D. Ciancanelli, who concluded that Wilkinson's $1 million payment to Wiley had a fair market value of between $15,474 and $61,030 to Wilkinson's creditors. Ms. Ciancanelli first reduced the $1 million payment by the percentage of Wilkinson's assets being paid to WBI under their settlement. This left $515,807 available to creditors. Noting that Wilkinson was deeply insolvent, Ms. Ciancanelli then took $515,807 and reduced it by two different percentages, 3.0% and 11.83%, that represented the worst- and best-case scenarios for how much creditors could expect to recover on their claims. This led Ms. Ciancanelli to conclude that the $1 million reduction in debt that Wilkinson received for his payment to Wiley was worth only $15,474 to $61,030 to creditors.

The bankruptcy court rejected Ms. Ciancanelli's valuation because she considered events subsequent to the date of the transfer. In particular, she considered the settlement with WBI and the potential recovery percentages of creditors. The bankruptcy court stated that the date of valuation should have been the date of the transfer. *See In re Morris Communications NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990) ("The date for defining such reasonable equivalence is the date of the transfer.").

The Trustee appealed the bankruptcy court's decision to the district court, which

4

affirmed. As an initial matter, the district court found that the benefit to Wilkinson was indirect, not direct as the bankruptcy court had concluded, because Wilkinson did not receive anything in exchange from Wiley, the party Wilkinson paid. Rather, the benefit stemmed from Wilkinson's relationship with WBI. But the district court found that this difference was insignificant to the outcome of the case because the benefit to Wilkinson, though indirect, was a dollar-for-dollar reduction in debt and thus was reasonably equivalent in value.

The Trustee had offered a revised valuation to the district court. This valuation was found in Ms. Ciancanelli's affidavit, which stated that the reduction in debt had a value of at most $118,300 to Wilkinson's creditors. To arrive at this amount, Ms. Ciancanelli multiplied $1 million by 11.83%, the best-case recovery percentage for creditors.

The district court rejected Ms. Ciancanelli's revised valuation. It found that even though Ms. Ciancanelli had eliminated reference to the WBI settlement, she still had made future assumptions about whether "all unsecured creditors would file proofs of claims and what assets would be recoverable on the date of bankruptcy." (J.A. at 1139).

## II. STANDARD OF REVIEW

"On appeal from a bankruptcy court, a district court applies the clearly erroneous standard of review to findings of fact, and reviews questions of law *de novo*. On appeal of a bankruptcy decision from a district court, this court employs the same standards, evaluating the bankruptcy court's decision directly, without being bound by the district court's legal determinations." *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004) (citing *In re M.J. Waterman & Associates, Inc.*, 227 F.3d 604, 607 (6th Cir. 2000); *In re Lawrence S.*

5

*Charfoos*, 979 F.2d 390, 392 (6th Cir. 1992)).

## III. DISCUSSION

### A. Reasonably Equivalent Value under 11 U.S.C. § 548

The Trustee's complaint sought to avoid the transfer as fraudulent under 11 U.S.C.

§ 548, which provides in part:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-
> . . .
>
> (B) (i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or became insolvent as a result of such transfer or obligation.

11 U.S.C. § 548(a) (1). A trustee seeking to avoid a transfer carries the burden of proving

each statutory element by a preponderance of the evidence. *See Frierdich v. Mottaz*, 294

F.3d 864, 867 (7th Cir. 2002); *In re Craig*, 144 F.3d 587, 590 (8th Cir. 1998); *In re Hayes*,

322 B.R. 644, 646 (Bankr. E.D. Mich. 2005); *In re Gerdes*, 246 B.R. 311, 313 (Bankr. S.D.

Ohio 2000).

Here, the only element in dispute is whether Wilkinson received reasonably

equivalent value in exchange for the payment to Wiley. This is a question of fact. *See In*

*re Humble*, 19 Fed.Appx. 198, 200 (6th Cir. 2001) (unpublished) (analysis of reasonably

equivalent value is "based upon the facts and circumstances of each particular case"); *see*

*also In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003); *In re Image Worldwide, Ltd.*, 139

6

F.3d 574, 576 (7th Cir. 1998). A court considering this question should first determine whether the debtor received <u>any</u> value in the exchange. If so, the court should determine if the value received was reasonably equivalent. *See In re Fruehauf Trailer Corp.*, 444 F.3d 203, 212 (3d Cir. 2006).

Though the Bankruptcy Code does not define "reasonably equivalent value," it does define "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor." 11 U.S.C. § 548(d)(2)(A). "[A] determination of whether value was given under Section 548 should focus on the value of the goods and services provided rather than on the impact the goods and services had on the bankrupt enterprise." *In re Financial Federated Title & Trust, Inc.*, 309 F.3d 1325, 1332 (11th Cir. 2002). This determination depends on the circumstances of each case and not on a fixed mathematical formula. *See In re Humble*, 19 Fed.Appx. at 200; *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997); *In re R.M.L., Inc.*, 92 F.3d 139, 145 (3d Cir. 1996). Fair market value is one factor the bankruptcy court may consider. *Barber*, 129 F.3d at 387. Whether the bankruptcy court used proper methodology in assessing value is an issue of law reviewed *de novo*. *In re Dunham*, 110 F.3d 286, 289-90 n.11 (5th Cir. 1997).

Value can be in the form of either a direct economic benefit or an indirect economic benefit. "It is well settled that 'reasonably equivalent value can come from one other than the recipient of the payments, a rule which has become known as the indirect benefit rule.'" *In re Northern Merchandise, Inc.*, 371 F.3d 1056, 1058 (9th Cir. 2004) (quoting *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 485 (4th Cir. 1992)). The indirect benefit rule was first explained in *Rubin v. Manufacturers Hanover Trust Co.*:

> [A] debtor may sometimes receive "fair" consideration even though the

7

consideration given for his property or obligation goes initially to a third person. . . . [T]he transaction's benefit to the debtor need not be direct; it may come indirectly through benefit to a third person. . . . If the consideration given to the third person has ultimately landed in the debtor's hands, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and [the statute] has been satisfied -- provided, of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.

661 F.2d 979, 991-92 (2d Cir. 1981) (internal quotation marks and citations omitted).

Because the benefit Wilkinson received did not come from Wiley, the district court was correct in finding that the benefit was indirect. *See Jeffrey Bigelow Design Group*, 956 F.2d at 485 (benefit is indirect when it "come[s] from one other than the recipient of the payments"). The Trustee argues that Wiley has the burden of proving that any indirect benefit was concrete and quantifiable. Some courts have indeed held that once "a plaintiff has established that consideration for the transfer passed to a third-party, the burden of demonstrating and quantifying reasonably equivalent value for the transfer shifts to the defendant." *In re Nat. Century Fin. Enter. Inc.*, 341 B.R. 198, 217 (Bankr. S.D. Ohio 2006) (citing cases).

The burden of showing that the benefit is concrete and quantifiable can be challenging in a case where the alleged benefit is goodwill, corporate synergy, a business opportunity, the continuation of a business relationship, or some other intangible benefit. *See*, *e.g.*, *In re Fidelity Bond and Mortg. Co.*, 340 B.R. 266, 287 (Bankr. E.D. Pa. 2006); *In re Dayton Title Agency, Inc.*, 292 B.R. 857, 875 (Bankr. S.D. Ohio 2003). That is not the case here, however. There is no dispute on the record that Wilkinson received a $1 million reduction in his debt to WBI as a result of the $1 million payment to Wiley. Wiley thus has demonstrated that the benefit to Wilkinson had concrete and quantifiable value.

8

The courts below found that the benefit was reasonably equivalent in value because Wilkinson received a dollar-for-dollar reduction in debt. On appeal, the Trustee repeats the argument, based on Ms. Ciancanelli's affidavit, that this benefit was not reasonably equivalent because the reduction in debt had a value of no more than $118,300 to creditors.

The date for determining reasonable equivalence is the date of the transfer. *See In re Chomakos*, 69 F.3d 769, 770 -71 (6th Cir. 1995); *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1126 (5th Cir. 1993); *In re Morris Communications NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990). The district court was correct that Ms. Ciancanelli's valuation does not eliminate reliance on events subsequent to the payment to Wiley. Though removing the WBI settlement from her calculation, Ms. Ciancanelli's valuation still makes assumptions about what will transpire after the payment, such as that every creditor will file a proof of claim and that all of Wilkinson's assets will be recoverable. Value is to be tested on the date of the transfer, not with reference to when distributions are made to creditors.

At the heart of the Trustee's argument is the assertion that satisfying a third-party antecedent debt can never amount to reasonably equivalent value for a debtor who is deeply insolvent at the time of the transfer. Before the payment to Wiley, Wilkinson had approximately $41 million in assets and $349 million in liabilities. After Wilkinson paid $1 million to Wiley, he had $40 million in assets and $348 million in liabilities. According to the Trustee, creditors "lost out" because the transfer left a smaller pool of assets available for them to recover in bankruptcy. From the creditors' perspective, the transfer was worth pennies on the dollar and thus was not reasonably equivalent in value.

The Trustee offers no statutory language or case law to support this approach to

9

analyzing reasonably equivalent value. The Bankruptcy Code expressly includes "satisfaction . . . of a present or antecedent debt of the debtor" in its definition of "value." 11 U.S.C. § 548(d)(2)(A). Courts have held that a reduction in debt is sufficient to establish equivalent value. *See, e.g., In re Uiterwyk Corp.*, 75 B.R. 33, 34 (Bankr. M.D. Fla. 1987); *In re Coors of N. Miss.*, 66 B.R. 845, 862 (Bankr. N.D. Miss. 1986); *In re Jamison*, 21 B.R. 380, 382 (Bankr. D. Conn. 1982). The Trustee would adopt an insolvency analysis for determining reasonably equivalent value, when § 548 is "'directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost.'" *In re United Energy Corp.*, 944 F.2d 589, 597 (9th Cir. 1991) (quoting *In re Jamison*, 21 B.R. at 382); *see also In re Richards & Conover Steel, Co.*, 267 B.R. 602, 614 n.4 (8th Cir. B.A.P. 2001); *In re Butcher*, 58 B.R. 128, 130 (Bankr. E.D. Tenn. 1986).

Further, the Trustee's argument ignores the fact that Wilkinson's net worth remained the same after the transfer, at negative $308 million. The district court rightly stated that "the focus should be on the overall effect on the debtor's net worth after the transfer." (J.A. at 1137) (citing *In re Newtowne, Inc.*, 157 B.R. 374, 379 (Bankr. S.D. Ohio 1993); *In re Galbreath*, 286 B.R. 185, 208 (Bankr. S.D. Ga. 2002)); *see also In re Richards*, 267 B.R. at 614 n.4; *In re Evergreen Security, Ltd.*, 319 B.R. 245, 254 (Bankr. M.D. Fla. 2003). As the Second Circuit held in *Rubin*,

> [F]air consideration will often exist for a novation, where the debtor's discharge of a third person's debt also discharges his own debt to that third person . . . . [T]he net effect . . . on the debtor's estate is demonstrably insignificant, for he has received, albeit indirectly, either an asset or the discharge of a debt worth approximately as much as the property he has given up or the obligation he has incurred.

661 F.2d at 992.

10

In sum, the courts below correctly found that Wilkinson received reasonably equivalent value in exchange for his payment to Wiley. On the date of the transfer, Wilkinson received a $1 million debt reduction in exchange for his $1 million payment to Wiley.

**B. Valuable Consideration under Kentucky Law**

The Trustee also claimed that the transfer was fraudulent under Kentucky law, which voids a transfer made "without valuable consideration." K.R.S. § 378.020. The bankruptcy court dismissed this claim for the same reasons it dismissed the federal claim under § 548(a)(1), and the district court affirmed.

The Trustee argues on appeal that discharge of a debt cannot constitute valuable consideration under Kentucky law. But the sole case cited by the Trustee, *In re Akin*, 64 B.R. 510 (Bankr. W.D. Ky. 1986), does not stand for that proposition. In *Akin*, the debtor made a series of transfers under the guise of satisfying his debts. The court found that the transfers were "outrageous gift[s]" that "clearly depict[ed] a preconceived and cavalier disregard for creditors' rights." 64 B.R. at 518. The record "teem[ed]" with "reprehensible conduct" and "such specific and general fraud as to be transparent to even the casual observer." *Id.*

Such is not the case here. The Trustee points to no evidence on the record below that Wilkinson's transfer to Wiley was anything other than a fair and bona fide transaction. There is no evidence that Wilkinson made the transfer with the intent to defraud his creditors.

As the courts below explained, discharge of a debt to a third party can constitute valuable consideration under Kentucky law. *See Burnett's Adm'x v. Farmers' Nat'l Bank*,

11

49 S.W.2d 1033, 1034 (Ky. 1932) (a benefit accruing to a third person is valuable consideration); *Linn v. Brown*, 206 S.W. 287, 289 (Ky. 1918) (discharge of a debt can constitute valuable consideration). Wilkinson's transfer therefore was made for valuable consideration.

## C. The Trustee's Motion to Exclude Defendant's Expert Testimony

In the bankruptcy court, the Trustee moved to exclude the testimony of defendant's expert, Dr. Donald J. Mullineaux. Dr. Mullineaux had testified that the economic interests of Wilkinson and WBI were fully aligned. Defendant used this testimony to support his alternative argument that Wilkinson received reasonably equivalent value from the payment to Wiley because Wilkinson, as majority shareholder of WBI, benefitted indirectly from the value of the books shipped to WBI. The Trustee moved to exclude the expert testimony as failing the standard set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). Both the bankruptcy court and the district court denied the Trustee's motion to exclude as moot upon finding that Wiley was entitled to summary judgment on grounds independent from Dr. Mullineaux's testimony.

On appeal, the Trustee renews his request to exclude Dr. Mullineaux's testimony. However, the courts below were correct in finding that the motion is moot. The testimony is unnecessary to a finding that Wiley is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the bankruptcy court's decision granting summary judgment to Defendant Wiley.