ELECTRONIC CITATION:  12 FED App. 0010P (6th Cir.)
File Name:  12b0010p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:   KAREN NEAL, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ANDREW W. SUHAR, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | No. 11-8081 |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG BRUNO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
Bankruptcy Case No. 09-40749; Adversary Proceeding No. 10-04132.

Argued: August 7, 2012

Decided and Filed: September 28, 2012

Before: EMERSON, McIVOR, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Bruce M. Broyles, THE LAW OFFICE OF BRUCE M. BROYLES, Boardman, Ohio, for Appellant.  Frederic P. Schwieg, Rocky River, Ohio, for Appellee.  **ON BRIEF:** Bruce M.

Broyles, THE LAW OFFICE OF BRUCE M. BROYLES, Boardman, Ohio, for Appellant. Frederic P. Schwieg, Rocky River, Ohio, for Appellee.

_____

## OPINION

_____

C. KATHRYN PRESTON, Bankruptcy Appellate Panel Judge.  At issue in this appeal is whether the debtor received reasonably equivalent value when she transferred property to her husband in a pre-petition separation agreement which was incorporated into a marriage dissolution decree.  The chapter 7 trustee alleged that she did not and that the transfer was avoidable under 11 U.S.C. § 548(a)(1)(B) and Ohio Revised Code § 1336.05.  The bankruptcy court agreed with the trustee, and entered judgment in favor of the chapter 7 trustee and against the debtor's ex-husband in the amount of $47,635.27.

## I.   ISSUES ON APPEAL

The issues presented by this appeal are (1) whether the bankruptcy court erred in determining the debtor did not receive reasonably equivalent value as contemplated under 11 U.S.C. § 548(a)(1)(B), (2) whether the bankruptcy court's judgment against defendant in the amount of $47,635.27 exceeded the amount recoverable under 11 U.S.C. § 550, and (3) whether the bankruptcy court erred in refusing to consider the likely outcome of a "contested divorce" in determining whether the debtor received reasonably equivalent value.

For the reasons that follow, the Panel affirms in part and reverses in part the bankruptcy court judgment, and remands the case for further proceedings.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel and no party has timely elected to have this appeal heard by the district court.  28 U.S.C. § 158(b)(6),

(c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).  A bankruptcy court order which sets aside a fraudulent conveyance pursuant to 11 U.S.C. § 548(a) is a final order for purposes of appeal.  *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321, 325 (B.A.P. 6th Cir. 2007).

A bankruptcy court's determination that a transfer should be set aside under 11 U.S.C. § 548(a) presents a mixed question of law and fact.  A bankruptcy court's determination as to whether the debtor received reasonably equivalent value is a question of fact.  *Southeast Waffles, LLC v. U.S. Dep't of Treasury* (*In re Southeast Waffles, LLC*), 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011).  Findings of fact are reviewed under the clearly erroneous standard.  *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007).  "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' "  *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

Whether a court used the proper methodology in determining value under 11 U.S.C. § 548 is a legal conclusion.  *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 Fed. App'x 337, 342 (6th Cir. 2006) (unpub.).  The bankruptcy court's legal conclusions are reviewed *de novo*.  *Solis v. Laurelbrook Sanitarium & Sch., Inc.,* 642 F.3d 518, 522 (6th Cir. 2011).  "De novo means that the appellate court determines the law independently of the trial court's determination."  *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

## III.  FACTS

Prior to filing for bankruptcy relief, Karen Neal ("Debtor") entered into a separation agreement with her husband, Carl Bruno ("Bruno").  The separation agreement was executed on July 30, 2008 ("Separation Agreement").  At the time of the separation, the parties had been married for approximately thirteen years.

Prior to executing the Separation Agreement, Debtor transferred to Bruno her one-half interest in the marital residence at 109 N. Raccoon Road, Austintown, Ohio ("Marital Residence"). The transfer took place on June 11, 2008, and was accomplished by Quit Claim Deed. Prior to the transfer, Debtor paid a home equity line of credit on the Marital Residence in full with a $28,000 loan from her parents. The Separation Agreement provided that Debtor waived any claim for equity in the Marital Residence. At the time of the transfer to Bruno, the Marital Residence had a fair market value of $77,500.00 and was subject to a first mortgage of $50,000.00. Bruno agreed to be solely responsible for the mortgage.

The Separation Agreement provided that Bruno would retain a vehicle and three motorcycles which were marital property.[1] Bruno retained two other motorcycles and another vehicle which were non-marital property. Bruno also retained two tracts of real property in Trumbull County, Ohio, which he had acquired prior to the marriage by bequest from his father. The tracts consisted of approximately 60 acres total. In the Separation Agreement, Debtor acknowledged that the Trumbull County property was Bruno's separate property.

The Separation Agreement provided that Debtor would retain a 1999 Pontiac Bonneville. The Separation Agreement stated that there was no marital debt and that the parties had divided their bank accounts to their mutual satisfaction. Both parties waived any claim to spousal support and each party agreed to retain their pension and/or retirement accounts free and clear of any claim from the other. At the time of the parties' divorce, the only retirement account possessed by either party was Debtor's pension with UPS.

The Trumbull County Court of Common Pleas granted Debtor and Bruno a Dissolution of Marriage ("Dissolution Decree") on September 4, 2008. The Dissolution Decree states that "the Separation Agreement entered into by and between the Petitioners, having been found to be fair and equitable, is hereby approved and incorporated into this Decree in its entirety." Dissolution Decree at 2, Adv. Proc. No. 10-04132, ECF No. 48.

---

[1]Neither party submitted any evidence of the values of these vehicles or the extent to which they were encumbered assets. As a result, the bankruptcy court did not include consideration of these vehicles in making its findings and calculations.

Debtor filed her chapter 7 no-asset petition on March 11, 2009. According to Schedule D, Debtor's only secured creditor was Citifinancial with an $11,000.00 lien on the 1999 Pontiac Bonneville.[2] Debtor listed credit card debt of $60,763.48 on Schedule F in addition to the $28,000.00 loan from her parents which she used to pay off the home equity line of credit on the Marital Residence. In due course, Debtor received her chapter 7 discharge.

On June 18, 2010, the Trustee filed an adversary complaint against Bruno alleging that Debtor received less than reasonably equivalent value for the assets she transferred to Bruno pursuant to the Separation Agreement. The Trustee sought to avoid and recover the value of the alleged constructively fraudulent transfers for the benefit of the bankruptcy estate pursuant to 11 U.S.C. §§ 548(a)(1)(B), 544 and 550 and Ohio Revised Code §§ 1336.04 and 1336.05.

The parties filed a "Joint Statement of Contested and Uncontested Facts" on November 2, 2011. The uncontested facts included those facts set forth *supra* as well as the following:

19. The [$11,000 car loan, the $60,763.48 in credit card debt and the $28,000 loan from Debtor's parents] were incurred during the parties' marriage.

20. Mr. Bruno had only the $50,000 mortgage against the Marital Residence as a result of the parties [sic] divorce.

Joint Statement of Contested and Uncontested Facts at 2-3, Adv. Proc. No. 10-4132, ECF No. 45. Pursuant to the parties' stipulation, the only contested fact was whether Debtor received reasonably equivalent value for the transfers set forth in the Separation Agreement and Dissolution Decree.

In response to the Trustee's complaint, Bruno argued that in a contested divorce proceeding he would have asked for, and most likely received, spousal support, continued health insurance and one-half of Debtor's pension. Bruno also argued that the property settlement reached in the Separation Agreement was indicative of what Debtor would have received in a contested divorce. Lastly, Bruno argued that the $60,743.48 in credit card debt and the $28,000 loan from Debtor's

---

[2]The testimony at the trial established that Debtor and Bruno originally purchased the Bonneville together; however, that debt was paid in full during the marriage. Debtor testified that she subsequently incurred the $11,000.00 debt with Citifinancial on her own. As a result, the bankruptcy court excluded the $11,000.00 loan from its calculations in this case.

parents were not marital debts because Debtor failed to disclose the existence and extent of the debt to him. Bruno argued that Debtor's failure to disclose these debts amounted to financial misconduct under Ohio law.

The bankruptcy court conducted a trial on the Trustee's complaint on October 31, 2011. The evidence revealed that Debtor managed all of the bills and marital expenses during the marriage. Throughout the majority of the marriage, Debtor was the primary breadwinner for the couple, earning approximately $46,000.00 per year working at UPS. Although Bruno was a licensed cosmetologist throughout the entirety of the marriage and capable of working, he did not earn a substantial amount of money at this profession in the last few years of the marriage. His average annual income for 2005 through 2007 was $1,390.40.

Although neither party submitted copies of credit card statements, the testimony established that the majority, if not all, of the credit card accounts were solely in Debtor's name with Bruno being an authorized user on some of the accounts. All of the credit card statements were mailed to the Marital Residence until approximately one year before the marriage was dissolved. At that time, Debtor caused some of the credit card statements to be mailed to her parents' address. Debtor did not explain why she changed the mailing address for these bills.

Around the time the marriage was dissolved, Debtor had Bruno's name removed from two of the credit card accounts in an attempt to help Bruno improve his credit rating for purposes of refinancing the Marital Residence. With the exception of a Capital One credit card with a balance of $2,558.91, the bankruptcy court found that all of the credit card debt, as well as the proceeds from the home equity line of credit, were used for day-to-day living expenses during the marriage. These expenses included groceries, clothing, and "basic lifestyle" expenses. Debtor also testified that she discussed the credit cards and the amount of the debt with Bruno and her attorney during the negotiations for the Settlement Agreement.

At the time of the dissolution, Debtor was eager to end her marriage to Bruno. In light of that, Debtor agreed to remain solely responsible for the credit card debt and agreed to transfer her interest in the Marital Residence in an effort to avoid a protracted state court divorce proceeding so

that she could move on with her life. She paid the home equity line of credit in full because she knew Bruno would not agree to pay any portion thereof.

After the dissolution of her marriage, Debtor married her supervisor at UPS. Because UPS has an anti-nepotism policy, Debtor quit her job with UPS in March 2008. Debtor then obtained a job with Hynes Industries making $32,000.00 per year. Debtor worked for Hynes until she was laid off approximately nine months later due to downsizing.

In the course of the dissolution proceeding, Debtor retained a domestic relations lawyer. Bruno did not hire an attorney, but he did meet with Debtor and her attorney on three occasions.

The Trustee determined that the present value of Debtor's UPS pension plan at the time the marriage was dissolved was $18,434.04. Because the entire pension was earned during the parties' marriage, the Trustee conceded that Bruno would have been entitled to half the present value of the pension in a contested divorce.

The bankruptcy court issued a Memorandum Opinion on December 9, 2011, in which it concluded that Debtor did not receive reasonably equivalent value when she relinquished all equity in the marital residence and assumed responsibility for all unsecured debt. In so doing, the bankruptcy court determined that three of the four elements of both 11 U.S.C. § 548(a)(1)(B) and Ohio Revised Code § 1336.05(A) had been undisputedly established by the record. The Joint Statement of Uncontested Facts set forth that Debtor transferred an interest in property and that the transfer took place within two years before the bankruptcy petition was filed. The amount of debt Debtor assumed in the dissolution, coupled with the fact that Debtor filed her bankruptcy petition in close proximity thereto, led the bankruptcy court to conclude that Debtor was either insolvent at the time of the transfer or that the transfer caused her to become insolvent.

The only remaining issue for the bankruptcy court to determine was whether Debtor received reasonably equivalent value in exchange for the transfer. In analyzing this question, the bankruptcy court looked to Ohio domestic relations law to determine several issues. First, the bankruptcy court concluded that Ohio law mandates equitable division of marital property between the spouses.

Normally, an equitable division results when the property is apportioned equally between the parties. If, however, a court determines that an equal division would be inequitable, it must allot the property equitably. The bankruptcy court also noted that Ohio law normally requires a court to divide marital debt equally unless such division would lead to an inequitable result, and under Ohio law, debt incurred during the marriage is presumed to be marital debt.

Because both parties were capable of supporting themselves, the bankruptcy court concluded that there was nothing in the record which mandated anything other than an equal division of the marital assets and debts in Debtor and Bruno's marriage dissolution. Additionally, the bankruptcy court concluded that any benefit Debtor received by agreeing to the settlement, and thereby foregoing a protracted contested divorce proceeding, did not constitute reasonably equivalent value.

The bankruptcy court next addressed Bruno's argument that he would have asked for spousal support and continued health insurance. After examining the record, the bankruptcy court concluded that there was no evidence that Bruno would have been awarded either. Bruno was capable of working, but chose not to. Because there was nothing in the bankruptcy court record about health insurance coverage and because the Settlement Agreement did not address the issue, the bankruptcy court concluded there was no evidence which indicated that a domestic relations court would have awarded Bruno continued insurance coverage.

Turning to Bruno's arguments about the pension, the bankruptcy court agreed that Debtor's vested pension rights were marital property. As a result, the bankruptcy court determined that Bruno would have been entitled to one-half of the value of the pension, or $9,217.02. The Trustee does not dispute this conclusion.

Lastly, the bankruptcy court rejected Bruno's arguments that the vast majority of the credit card debt was not marital debt. Debtor had testified that all of the credit card charges, except for the Capital One account, were incurred for marital expenses and that Bruno knew of the existence of the credit cards "even if he did not know the specific amount owing on each card." *Suhar v. Bruno* (*In re Neal*), 461 B.R. 426, 435 (Bankr. N.D. Ohio 2011). Debtor testified that she had Bruno's name removed from two credit card accounts at Bruno's request so that he could improve his credit rating.

As a result, the bankruptcy court concluded that there was nothing in the record to support Bruno's arguments "that the Debtor and her counsel failed to apprise [Bruno] of the credit card debt prior to entry into the Separation Agreement." *Id.* at 436. Additionally, the bankruptcy court observed that

> the Defendant offered no evidence that the credit cards were not used for marital debt. Indeed, the Defendant stated that he had no idea about the couple's financial situation and that he left all household finances in the hands of the Debtor. The Defendant testified that he did not know the cost of the utilities associated with the Marital Residence or the amount spent for groceries or clothing.

*Id.* at 437. The bankruptcy court further noted that there was no evidence that Bruno ever asked Debtor about the extent of their credit card debt or that Debtor gave false answers to his inquiries. His testimony at trial established that he was simply unaware of the debt.

The bankruptcy court thus found that Bruno's allegations about Debtor's financial misconduct were unfounded and that Bruno's allegations did not rise to the level of financial misconduct as contemplated by Ohio Revised Code § 3105.171(E)(4) and (5). Based on Bruno's utter lack of interest in the couple's finances, the bankruptcy court concluded that Bruno would not have been any more informed about the credit card debt even if the statements had been mailed to the Marital Residence. The bankruptcy court also found that even if a trial court had found Debtor guilty of "financial misconduct" under Ohio law, "there is no basis to assume that . . . a trial court would have awarded all of the couple's equity in the Marital Residence to the Defendant and all of the couple's unsecured debt to the Debtor." *Id.* at 438.

The last step that the bankruptcy court took before calculating the amount of the recovery due the Trustee was to discuss the impact of *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693 (6th Cir. 1999). Although neither party raised the issue, the bankruptcy court looked to the decision of the Sixth Circuit Court of Appeals in *Fordu* to determine whether the statement in the marriage dissolution decree characterizing the Separation Agreement as "fair and equitable" precluded the Trustee's avoidance action. Because " '[dissolution] proceedings and fraudulent conveyance proceedings encompass different policy objective[s],' " the bankruptcy court stated that it "must look at the actual division of property to determine if the Debtor received reasonably equivalent value for the assets she transferred to the Defendant and the liabilities she retained as a result of the Decree." *Neal*,

461 B.R. at 438-39 (citing *Reisz v. Stinson* (*In re Stinson*), 364 B.R. 278, 282 (Bankr. W.D. Ky. 2007)).

The bankruptcy court determined that if the marital assets of the home equity and the present value of the UPS pension had been split equally, Debtor and Bruno would have each received $22,967.02 in assets. The bankruptcy court further determined that if the credit card debt of $58,204.57 ($60,763.48 listed on the petition minus the $2,558.91 Capital One debt that Debtor testified she incurred after the dissolution) and the $28,000 loan from Debtor's parents were split equally, Debtor and Bruno would have each come out of the dissolution with $43,102.29 in liability for unsecured debts. Under this formulation, each party's share of the assets and liabilities would have resulted in Debtor and Bruno each having "negative equity" (as the bankruptcy court termed it) of $20,135.27. The Separation Agreement provided Bruno with $27,500.00 in assets. The bankruptcy court therefore concluded that the Trustee was entitled to recover $47,635.27 from Bruno as the reasonably equivalent value for the transfers in the Separation Agreement and Marriage Dissolution Decree. On December 9, 2011, the bankruptcy court issued an order in accordance with its Memorandum Opinion which held Bruno liable to the estate for $47,635.27.

Bruno filed a timely notice of appeal of the bankruptcy court's order on December 16, 2011. Bruno filed a motion to stay execution of the judgment on December 16, 2011. The bankruptcy court granted this motion on December 19, 2011, conditioned upon Bruno posting a *supersedeas* bond of $47,000.00.

## IV.   DISCUSSION

Section 548(a)(1)(B) of the Bankruptcy Code provides that a

> trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
>
> . . . .

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1)(B). In seeking to avoid a transfer as a constructively fraudulent conveyance, the trustee must prove that: (1) the debtor transferred an interest in property; (2) the transfer took place within two years before the bankruptcy case was filed; (3) the debtor received less than reasonably equivalent value, either voluntarily or involuntarily; and (4) the debtor was insolvent on the date the transfer was made or became insolvent as a result of the transfer. *Southeast Waffles, LLC v. U.S. Dep't of Treasury* (*In re Southeast Waffles, LLC*), 460 B.R. 132, 138 (B.A.P. 6th Cir. 2011). A trustee seeking to avoid a transfer under this section bears the burden of proof as to each element by a preponderance of the evidence. *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002); *Baumgart v. Bedlyn, Inc.* (*In re Empire Interiors, Inc.*), 248 B.R. 305, 307 (Bankr. N.D. Ohio 2000).

In the case currently on appeal, the first, second and fourth elements have undisputedly been established. The only contested issue is whether Debtor received reasonably equivalent value for the transfer of her interest in the equity in the Marital Residence.

A.      *Corzin v. Fordu* (*In re Fordu*)

Preliminarily, the Panel recognizes that the bankruptcy court was correct in interpreting the impact of *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693 (6th Cir. 1999). In *Fordu*, the Sixth Circuit Court of Appeals determined that a recitation in a marriage dissolution decree finding the separation agreement "a fair, just and equitable property division" did not preclude the trustee from litigating the issue of whether the transfers could be avoided as a constructive fraudulent conveyance under 11 U.S.C. § 544(b) and Ohio law. *Id.* at 696-97. The Sixth Circuit analyzed the case under the principles of issue preclusion and claim preclusion and determined that the state court dissolution decree was not entitled to preclusive effect under either doctrine. *Id.* at 704, 710.

Unlike contested divorce proceedings in which the parties actually litigate the issues, a decree granting an agreed dissolution is entered upon submission of a settlement agreement to the domestic

relations court. The settlement agreement represents the parties' resolution of all issues in the case and is reached without any assistance from the court. A domestic relations court simply issues the dissolution decree, often without ever hearing or ruling upon any of the issues in the case, including the fairness of the settlement set forth therein. Because of this, the Sixth Circuit concluded that the fairness of the parties' settlement is not an issue that has been actually adjudicated regardless of whether the dissolution decree contains a recitation that the settlement agreement was "fair, just and equitable." *Id.* at 704. Consequently, the Sixth Circuit held that "[a]bsent a judgment following actual litigation, the Dissolution Decree cannot be accorded issue-preclusive effect" on the issue of whether a debtor received reasonably equivalent value for the transfers referenced in the decree. *Id.* (citation omitted).

The Sixth Circuit also determined that the marriage dissolution decree was not entitled to any claim preclusive effect for two main reasons. First, Ohio law requires "an identity of parties or their privies" before claim preclusion can apply. *Id.* at 705. Because the chapter 7 trustee is a "representative of all creditors of the bankruptcy estate," the Sixth Circuit determined that he is more than just a successor-in-interest to the debtor. *Id.* As a result, the court concluded that the trustee was not in privity with the debtor in the marriage dissolution proceeding. *Id.* at 705-06.

Secondly, the Sixth Circuit determined that "the standards for measuring the fairness of a property division in the domestic relations arena and reasonably equivalent value in a fraudulent transfer case are separate and distinct." *Id.* at 707. Pursuant to Ohio Revised Code § 3105.171(F), a domestic relations court must analyze a number of factors in making an equitable division of property. That analysis is "not constrained by a reasonable equivalence standard." *Id.* at 708. As a result, the Sixth Circuit determined that a domestic relations court "could produce a division of marital property that would satisfy the requirements of Ohio Rev. Code Ann. § 3105.171(F), yet not pass muster under the reasonable equivalence test." *Id.* Because of these "divergent decisional standards," the Sixth Circuit held that a dissolution decree is not entitled to any claim preclusive effect. *Id.*

*Fordu* makes clear that in determining whether a debtor received reasonably equivalent value, a bankruptcy court in the Sixth Circuit is not bound by any recitations in a marriage dissolution

decree that the settlement is fair, just, or equitable. Rather, a bankruptcy court must independently analyze the transfers at issue to determine if the debtor received reasonably equivalent value. Accordingly, the bankruptcy court in the case currently on appeal correctly determined that the Dissolution Decree did not preclude the Trustee's § 548(a)(1)(B) cause of action against Bruno.[3]

B.      *Reasonably Equivalent Value and 11 U.S.C. § 550(a)*

Given that the Dissolution Decree is not entitled to any preclusive effect, the Panel must now determine whether the bankruptcy court erred in finding that the transfer approved in the Dissolution Decree is avoidable as a fraudulent conveyance pursuant to § 548(a)(1)(B). To do this, the Panel must determine if Debtor received reasonably equivalent value in exchange for the transfer and, if she did not, whether the $47,635.27 was the appropriate recovery to her bankruptcy estate.

In determining whether a debtor received reasonably equivalent value, a court must initially determine whether the debtor received any value for the exchange. *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. App'x 337, 341 (6th Cir. 2006) (unpub.). For purposes of § 548, "value" is defined as "property, or satisfaction or securing of a present or antecedent debt of the debtor . . . ." 11 U.S.C. § 548(d)(2)(A). Ohio's Uniform Fraudulent Transfer Act, under which the Trustee also sought recovery, sets forth the same definition:

> (A) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, . . . .

Ohio Rev. Code Ann. § 1336.03(A).

Once a court concludes that value was received, it must then determine if the value was reasonably equivalent to the value surrendered. *Fordu*, 201 F.3d at 707-08. The term "reasonably

---

[3]In his brief on appeal, Bruno argued that the Panel should disregard *Fordu* and instead follow the holding in the Fifth Circuit case of *Ingalls v. Erlewine* (*In re Erlewine*), 349 F.3d 205 (5th Cir. 2003). This we cannot do. First and foremost, we are bound by decisions issued by the Sixth Circuit Court of Appeals. Secondly, *Erlewine* is wholly inapplicable; the facts in *Erlewine* are distinctly different from the facts in the case on appeal. In *Erlewine*, the parties obtained a divorce after fully litigating the issues between them in state court. They did not dissolve their marriage through an uncontested marriage dissolution process.

equivalent value" is not defined in the Bankruptcy Code. "Generally, the question of whether reasonably equivalent value has been given for a transfer of property is a question of fact." *Southeast Waffles,* 460 B.R. at 139 (citation omitted). To answer this question, a court must compare the value of what was received to the value of what was given. *Fordu*, 201 F.3d at 708. A debtor need not receive a dollar-for-dollar equivalent in order for a court to find he received reasonably equivalent value. *Congrove v. McDonald's Corp.* (*In re Congrove*), 222 Fed. App'x 450, 454 (6th Cir. 2007). Rather,

> the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

*Harman v. First Am. Bank of Md.* (*In re Jeffrey Bigelow Design Grp., Inc.*), 956 F.2d 479, 484 (4th Cir.1992). As stated *supra*, the methodology used by a court in assessing value under § 548(a) is a conclusion of law which is reviewed *de novo*. *Wilkinson*, 196 Fed. App'x at 342.

If a court concludes that a debtor did not receive reasonably equivalent value, it must then determine the extent to which the trustee can recover from the transferee. Section 550 of the Bankruptcy Code provides "to the extent that a transfer is avoided under . . . section 548 . . . the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from" the transferee. 11 U.S.C. § 550(a)(1). The purpose of § 550(a) is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Hirsch v. Gersten* (*In re Centennial Textiles, Inc.*)*,* 220 B.R. 165, 176 (Bankr.S.D.N.Y.1998). "[W]hat value to award [pursuant to §550(a)] is left entirely to the court's discretion." *Meoli v. The Huntington Nat'l Bank* (*In re Teleservices Grp., Inc.*), 469 B.R. 713, 765 (Bankr. W.D. Mich. 2012).

In the case currently on appeal, there are essentially two pools of interests at issue: (1) the assets divided in the Separation Agreement; and (2) the unsecured debt for which Debtor took responsibility outside of the agreement. The bankruptcy court included both interests in its determination and calculations. The parties do not dispute that the bankruptcy court properly

considered the division of assets set forth in the Separation Agreement. However, Bruno argues that inclusion of the unsecured debt in the calculations was in error.

The bankruptcy court looked to the various debts Debtor assumed in conjunction with the parties' marriage dissolution. It determined that Debtor accepted sole responsibility for the $58,204.57 in credit card debt which was used for marital expenses and the $28,000.00 loan Debtor obtained from her parents to pay off the home equity line of credit. Both of these debts were unsecured. The only debt Bruno assumed in the Separation Agreement was the $50,000.00 mortgage on the marital residence. The bankruptcy court then added up the marital assets (the Marital Residence and Debtor's UPS pension) and subtracted the total amount of marital debt and determined that the Trustee was entitled to an award of $47,635.27 against Bruno.

In determining whether a debtor received reasonably equivalent value, assets less liabilities assumed by the recipient of the assets may be an appropriate formula to consider. *See Slone v. Dirks* (*In re Dirks*), 407 B.R. 442 (B.A.P. 6th Cir. 2009) (unpub. table decision).[4] However, the assessment and calculations are fact driven, *Dirks*, 407 B.R. 442 at \*7 (citing *Wilkinson*, 196 Fed. App'x at 342), and where the liabilities greatly exceed assets, the formula may not properly apply.

Debt is not an asset and, as such, it has no inherent value. Few courts have included consideration of marital debt in determining whether a debtor received reasonably equivalent value. The Panel notes that in *Fordu*, the court considered only the value of the assets transferred, and the opinion makes no reference to marital debt. The focus of the *Fordu* decision was whether assets which had been transferred were property of the estate, and therefore recoverable by the Trustee. Debt is not property of the estate. While an analysis of how the parties allocated marital debt may be the subject of a marriage dissolution proceeding, such an analysis may be irrelevant to a fraudulent transfer action brought by a trustee in bankruptcy.

---

[4]Because a marriage dissolution decree is not entitled to preclusive effect, a statement in a marriage dissolution decree that there is no marital debt does not preclude a bankruptcy court from considering marital debt in its analysis. *Dirks*, 407 B.R. 442.

In this particular case, Debtor assumed responsibility for all of the couple's credit card debt; however, this did not confer any value on Bruno for two reasons. First, as the Trustee's expert testified, credit card companies are not bound by any division of liability for credit card debt that a domestic relations court might make. Instead, a credit card company's right to repayment is controlled solely by the contractual relationship between the parties. The testimony at trial was that the majority of the credit card debt was owed solely by Debtor. Debtor's assumption of the responsibility for these credit cards conferred no benefit on Bruno because he had no contractual obligation to pay that debt. To the extent Bruno is contractually liable for a portion of the credit card debt, the credit card companies can seek recovery of the balance from him despite the parties' agreement. Secondly, the testimony established that Bruno was only an authorized user on some of the credit card accounts. According to the Trustee's expert, authorized users are not ordinarily contractually liable for credit card debt. Under either scenario, Debtor's assumption of the debt did not confer any type of benefit on Bruno. Bruno was either not contractually liable for the debt or, if he was, he remained liable for the debt despite Debtor's assumption thereof.

Turning to the $28,000 loan Debtor obtained from her parents, the Panel concludes that the bankruptcy court also erred in including this debt in its calculations. Neither the Trustee nor Debtor introduced any evidence about the terms of this loan. The only facts clearly established about this loan were that its proceeds were used to pay off the home equity line of credit on the house, that Debtor's parents gave the loan directly, and solely, to Debtor, and that Debtor's parents did not file a proof of claim. Neither party argued that Bruno was ever liable for this loan. Debtor's obligation to repay the loan has now been discharged in her chapter 7 proceeding. As with the credit card debt, by assuming liability for this loan, Debtor did not confer a benefit on Bruno. For this reason, the bankruptcy court improperly considered the $28,000 loan in its calculations.

In addition to the fact that Debtor's assumption of the debt did not confer a benefit on Bruno, the amount of debt in this case greatly exceeds the assets received by Bruno. The sole asset received by Bruno was $27,500.00 of equity in the Marital Residence. In light of that fact, the Panel also concludes that it would be unfair to impose liability on Bruno for half of the marital debt, much of which he was not contractually obligated to pay. Doing so and requiring him to pay the chapter 7

trustee $47,635.27 would yield an inequitable result under the particular facts of this case. The bankruptcy court's inclusion of the unsecured debt under the facts of this case was in error.

Having disposed of the debt issue, the Panel must now determine whether Debtor received reasonably equivalent value for the transfers set forth in the Separation Agreement. That agreement provided for the transfer of two assets. First, Debtor agreed to waive her interest in the equity in the Marital Residence. Second, Debtor was awarded sole entitlement to her UPS pension. The parties stipulated that the equity in the residence at the time of the transfer was $27,500.00. The Trustee testified that the value of the pension was $18,434.04 at the time the marriage was dissolved. Comparing these transfers, the evidence demonstrates that Debtor transferred an interest worth $13,750.00 in exchange for an interest worth $9,217.02. Clearly, the value of the property transferred by Debtor in the Separation Agreement was worth significantly more than the property she received under that agreement. As a result, the Panel concludes that the Debtor did not receive reasonably equivalent value for the transfer of her interest in the Marital Residence. The Trustee may avoid that transfer as a constructively fraudulent conveyance to the extent that it exceeded the value of what Debtor received, and recover that amount from Bruno.

The Panel concludes that the value the Trustee is entitled to recover from Bruno pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a) is $4,532.98. Because the bankruptcy court awarded the Trustee $47,635.27, that portion of the bankruptcy court's order will be reversed and remanded with instructions for the bankruptcy court to enter judgment against Bruno for $4,532.98.

C.     *The likely outcome of a contested divorce*

Bruno's last argument posited that the bankruptcy court erred by failing to consider the likely outcome of a "contested divorce" in determining whether Debtor received reasonably equivalent value. Bruno's argument is wholly without merit. The Sixth Circuit expressly rejected such an approach in *Fordu*. Under Ohio law, a domestic relations court is obligated to divide marital property under various, equitable factors. These factors do not always lead to an equal division of marital assets. As a result, a division of property based on Ohio law may not "pass muster under the reasonable equivalence test." *Fordu*, 201 F.3d at 708. For that reason, the Sixth Circuit concluded

-17-

that a bankruptcy court must simply "compare the value of the property transferred with the value of that received in exchange for the transfer." *Id.* at 707. As such, it was unnecessary for the bankruptcy court to consider the likely outcome of a contested divorce. The bankruptcy court's sole task was to compare the value of what Debtor received with the value of what Debtor transferred in the course of the marriage dissolution proceedings.

## V.   CONCLUSION

For the reasons set forth herein, the Panel affirms that portion of the bankruptcy court's December 9, 2011 order in which it determined Debtor did not receive reasonably equivalent value for the transfers made pursuant to the Separation Agreement. The Panel reverses that portion of the December 9, 2011 order finding that the chapter 7 trustee was entitled to recover $47,635.27 from Bruno and remands the proceeding to the bankruptcy court with instructions to amend its December 9, 2011 judgment against Bruno to $4,532.98.