NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0425n.06

No. 20-1775

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

IN RE: OAKLAND PHYSICIANS MEDICAL
CENTER, LLC, dba Doctors' Hospital of Michigan,

    Debtor.

_____

MICHAEL SHORT,

    Appellant,

v.

BASIL SIMON,

    Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Sep 08, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

---

BEFORE: **BATCHELDER, MOORE, and BUSH, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge.** In 2015, Oakland Physicians Medical Center, L.L.C., d/b/a Doctors' Hospital of Michigan (represented by Trustee Basil Simon, collectively hereinafter "Debtor") filed for Chapter 11 Bankruptcy. One of Debtor's member-physicians, Defendant-Appellant Michael Short, who, over the years, had advanced to Debtor some $1.6 million, filed a proof of claim for $952,377.80 that he alleged he advanced to Debtor as loans. Debtor objected to Short's proof of claim and brought this adversary action to recover $571,939.44 that it had transferred to Short before filing for bankruptcy, claiming that these amounts were avoidable prepetition transfers. Because the record supported the claim that advances to Debtor in the amounts of $100,000 and $114,000 were loans but was devoid of evidence that any other advances were loans, the bankruptcy court (1) characterized Short's

advances worth $952,377.88 as capital contributions and disallowed his proof of claim and (2) ordered Short to pay back to Debtor $357,939.44's worth of avoidable preferential and fraudulent transfers. We **AFFIRM** the bankruptcy court.

## I.

In 2008, Debtor, which comprised approximately 45 member-physicians and McLaren Health Care, invested millions of dollars to acquire Pontiac General Hospital in Pontiac, Michigan. Two years later, McLaren left the venture and demanded repayment of the money loaned to Debtor. To repay McLaren and finance the hospital's revival, the member-physicians advanced cash to Debtor. But the member-physicians' efforts fell short: Debtor could not pay the payroll, taxes, vendors, and medical-malpractice insurance. It filed for Chapter 11 Bankruptcy in July 2015.

Short was one of those member-physicians who advanced money to Debtor. He also served on Debtor's board of directors. Between November 2011 and July 2015, Short made twenty advances[1] to Debtor totaling $1,632,333.34—including a $114,000 loan; additionally in July 2011, Short advanced $100,000 to Debtor. Both the $114,00 loan and the $100,000 advance are documented by signed promissory notes. Between April 2013 and July 2015, Debtor transferred $571,939.44 to Short—including three payments totaling $100,000 in July 2015 (within one year of Debtor's filing for bankruptcy), which the parties agreed paid back a June 2015 advance from Short referred to as the "Handshake Loan."

A year after Debtor filed for bankruptcy, Short filed a proof of claim in the amount of $952,377.80 for "monies loaned," which Short claimed was the outstanding balance owed by Debtor for his prior advances. Debtor objected to Short's proof of claim and brought this adversary

---

[1] We refer to Short's transfers of money to Debtor as "advances" and Debtor's transfers to Short as "transfers."

proceeding to (1) recharacterize as capital contributions Short's $952,377.80's worth of advances and disallow his proof of claim, and (2) avoid the $571,939.44 that Debtor paid to Short before filing for bankruptcy. We summarize Debtor's claims as follows:

- Count I – Claim to recharacterize as capital contributions $952,377.80 for "monies loaned";
- Count II – Claim to avoid three July 2015 preferential transfers of $100,000 under 11 U.S.C. §§ 547(b), 550(a) and 551;
- Count III – Claim to avoid fraudulent transfers of $571,939.44 under 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550 and 551;
- Count IV – Claim to avoid fraudulent transfers of $571,939.44 under Michigan's Uniform Fraudulent Transfer Act, Mich. Comp. L. ("M.C.L.") §§ 566.31 et seq, and 11 U.S.C. §§ 544(b) and 550;
- Count V – Claim for breach of statutory duties to act in good faith and in the best interests of Debtor;
- Count VI – Claim to subordinate Short's proof of claim; and
- Count VII – Claim to disallow Short's proof of claim under 11 U.S.C. § 502(d).

Following discovery and extensive motion practice, each side moved for summary judgment: Debtor on Counts II, III, and IV, and Short on Count II. After a hearing on those motions, the bankruptcy court held that the three July 2015 transfers from Debtor to Short totaling $100,000 (payment on the June 2015 Handshake Loan) were avoidable preferences under 11 U.S.C. § 547(b). Accordingly, the court granted Debtors' motion for summary judgment on Count II, denied Short's motion on that count, and denied as well Short's motion to reconsider.

Short then moved for summary judgment on Counts III through VI. Finding that there was a genuine issue of material fact as to whether the advances that were the subject of Counts III and IV, *i.e.*, the fraudulent-transfer counts, were loans or capital contributions, the bankruptcy court held an evidentiary hearing at which it took evidence limited to that question. This determination,

the court noted, would resolve both the fraudulent-transfer counts and the remaining characterization and disallowance counts. At the evidentiary hearing, the parties examined four witnesses and entered fourteen exhibits into the record, including: a "Loan Summary," which was compiled by Debtor's Controller Marsha Feigner; a 2015 affidavit from Short in connection with a separate Michigan lawsuit; and several signed and unsigned promissory notes. The bankruptcy court found that because the parties had memorialized with signed promissory notes only two of Short's twenty advances—the advances made on July 1, 2011, for $100,000, and December 28, 2012, for $114,000.00[2] — only those two were loans, and the remaining advances were capital contributions because the record was devoid of any credible evidence to the contrary. The court therefore held that $257,939.44 in transfers from Debtor to Short were fraudulent under 11 U.S.C. § 548 (the "Code") and M.C.L. § 566.35 ("MUFTA") because they "were not made on account of an antecedent debt of Debtor."[3]

Debtor then filed a second motion for summary judgment on Counts I, III, IV, VI, and VII. The bankruptcy court entered final judgment in the case, granting judgment for Debtor on Counts I, III, IV, and VII, and dismissing Count V as withdrawn and Count VI as moot. It then ordered Short to repay to Debtor $357,939.44—$100,000 for the preferential payments and $257,939.44 for the fraudulent transfers.

---

[2] The court also noted that the June 2015 Handshake Loan was a valid loan for the purpose of resolving Count II on summary judgment. That determination had no bearing on the court's post-hearing opinion.

[3] As an additional basis for its holding, the court held that a *Roth Steel* analysis of the evidence—as articulated in *Bayer Corp. v. MascoTech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726 (6th Cir. 2001)—resulted in a finding that the disputed advances were capital contributions. We need not address this alternative holding because, as we explain hereinafter, we find no error in the court's findings that the record clearly demonstrated that only two of the Advances at Issue were loans, that the record did not contain evidence supporting the claim that the rest of the Advances were loans, and that the rest were therefore capital contributions.

Short appealed the judgment to the United States District Court for the Eastern District of Michigan, which affirmed the bankruptcy court. *Short v. Simon*, No. 19-10454, 2019 U.S. Dist. LEXIS 109152 (E.D. Mich. July 1, 2019). He now timely appeals to this court.

## II.

In his sixty-six-page brief, Short advances three general arguments: that the bankruptcy court: (1) improperly granted summary judgment to Debtor on the Count II preference claim; (2) made numerous errors both of fact and law during the evidentiary hearing regarding Counts III and IV; and (3), due to several of its erroneous findings of fact, improperly concluded that only two of Short's twenty advances were loans. To the extent that Short's brief contains issues not encompassed by these three arguments, he did not provide any argument to support them. We decline to address those perfunctory claims. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited.").

### A. Standards of Review

"When an appeal is taken from a district court's review of a bankruptcy court decision, we directly review the bankruptcy court's decision rather than the district court's review of the bankruptcy court's decision." *Sunshine Heifers, LLC v. Citizens First Bank (In re Purdy)*, 870 F.3d 436, 442 (6th Cir. 2017) (quotation marks and citation omitted). "We accord discretion in reviewing only the original bankruptcy court findings, not those included in the decision rendered by the district court." *Id.* (quotation marks and alterations omitted).

We review de novo a motion for summary judgment, considering all facts and reasonable inferences in the light most favorable to the non-moving party. *Autostyle*, 269 F.3d at 735. To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact.

*Id.* In other words, there must be evidence on which the jury could reasonably find for the non-movant. When a party seeks summary judgment on claims for which it does not bear the burden of persuasion at trial, the moving party may discharge its burden by "pointing out to the district court . . . that there is an absence of evidence to support [the non-moving party's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If there is no factual disagreement or the evidence is one-sided, then the moving party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

We review the court's findings of fact for clear error. *Id.* The courts have long held that a finding of fact is clearly erroneous only "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). And "[w]e review a bankruptcy court's evidentiary admissions or exclusions for abuse of discretion." *U.S. Bank Nat. Ass'n v. U.S. E.P.A.*, 563 F.3d 199, 210 (6th Cir. 2009).

Finally, we review for plain error Short's claims that he raised for the first time on appeal. Under plain-error review, Short must show that there was an "(1) error (2) that 'was obvious or clear,' (3) that 'affected [his] substantial rights[,]' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). "An error is plain when, at a minimum, it is clear under current law." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quotation marks and citation omitted).

## B. Preferences

Debtor and Short filed cross-motions for partial summary judgment, disputing whether the $100,000 in transfers made in July 2015 were preferences under 11 U.S.C. § 547(b), and if they were, whether Short had an affirmative defense under § 547(c)(2). The bankruptcy court granted summary judgment to Debtor.

It is undisputed that the transfers occurred during the preference period. Therefore, we inquire only as to whether Short has an affirmative defense to avoidance under § 547(c)(2). That section says that:

> (c) The trustee may not avoid under this section a transfer—
>
> . . .
>
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2).

To defeat Debtor's motion, Short had to provide evidence that would prove two elements: (1) that Debtor made the preferential transfers to pay a debt incurred in the ordinary course of business between Debtor and Short; and (2) that the transfers were either made in the ordinary course of business between Debtor and Short or made according to ordinary business terms. Debtor needed only to show that the record lacked evidence from which a jury could conclude that Debtor's transfers to Short repaid a debt in the ordinary course of business or according to ordinary business terms.

The bankruptcy court held that there was a genuine issue of material fact about the first element—whether the Debtor incurred the debt in the ordinary course of business, under the terms of the 2015 Handshake Loan. But it held that there was no genuine issue as to the second—that Debtor's transfers did not repay the debt in the ordinary course of business or according to ordinary business terms. Here, the parties dispute only the second element. We find no evidence to create a genuine issue of material fact.

### 1. Repayment in the Ordinary Course of Debtor's and Short's Business Affairs

To determine whether the 2015 transfers were "made in the ordinary course of business or financial affairs," we examine "several factors, including timing, the amount and manner [in which] a transaction was paid[,] and the circumstances under which the transfer was made." *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.)*, 888 F.2d 42, 45 (6th Cir. 1989). To aid our analysis, we look at the payments made during the preference period and compare them to the parties' past practices. The bankruptcy court considered those past practices and concluded that Short failed to establish that the 2015 transfers were made in the ordinary course of business:

> [T]he Court is unable to make a comparison because [Short] failed to establish the parties' past practice with respect to the terms of repayment of the loans. [Short] point[ed] to copies of unsigned promissory notes, the loan summary, one signed promissory note, which is an on demand note with no maturity date, and Exhibits A and B to [Debtor]'s amended complaint. However, [Short] failed to link the past repayments to their respective loans to demonstrate the repayment history. None of the evidence relied on by [Short] is helpful on this point. By way of example, exhibits A and B to [Debtor]'s amended complaint merely show a list of loans by date issued and a separate list of repayments listed by the repayment date. There is no information given that would reflect what the r[e]payment amounts are for—or to which loan they correlate . . . . It is impossible for the Court to ascertain the average time frame of repayment for these parties. In fact, some of the loans have not been repaid.

On appeal, Short argues that Debtor failed to negate his affirmative defense. But Debtor carried its burden at the summary-judgment stage by showing that there was no evidence to support

Short's affirmative defense. Debtor pointed out that: (1) Short provided no evidence of an obligation by Debtor to repay Short, and that there was no evidence regarding the terms of the loans; (2) Short could not state any specific terms for repayment and had not kept any of the promissory notes; (3) Debtor's CEO and administrative staff decided when and in what amount Debtor transferred money to its members; and (4) one of Short's co-directors, Dr. Singhal, testified that any payments to Short or the other board members were optional.

Debtor's arguments were sufficient to shift the burden to Short to produce evidence that the transfers were made in the ordinary course of business. Short failed to carry that burden. He argues that because the 2015 Handshake Loan was a short-term loan and was repaid as agreed, repayment was made in the ordinary course of business between the parties. But his position finds no support in the record, which is devoid of any evidence of the terms of the Handshake Loan. Moreover, nothing in the record evinces Debtor's and Short's prior practices, let alone whether the 2015 transfers repaid the Handshake Loan or some other loan. Without more, we cannot ascertain whether the 2015 transfers were made in the ordinary course of business.

### 2. Ordinary Business Terms

Short argues that even if the payments were not made in the ordinary course of business, he was still entitled to summary judgment under the objective "ordinary business terms" component because the 2015 transfers were made according to ordinary business terms. *See* § 547(c)(2)(B). But Short forfeited this defense because he did not raise it until he moved the court to reconsider. *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012) ("Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal.").

The bankruptcy court did not err in granting summary judgment to the Debtor on Count II.

**C. Evidentiary Issues**

Short claims that, during the evidentiary hearing on Counts III and IV, the bankruptcy court abused its discretion by limiting documentary evidence and considering issues outside the scope of the Final Pretrial Order. We disagree.

### 1. *Admissibility of the Unsigned Promissory Notes*

Short argues that the bankruptcy court improperly limited the admissibility of the unsigned promissory notes to showing only that the advances "were made and that there was a balance carried on the books of a combination of advances and transfers." Short says that he properly authenticated the unsigned notes under Federal Rules of Evidence Rule 901(a), and the court should have admitted them without limitation. Because Short failed to object to the limitation, we review for plain error.

The court did not plainly err in limiting the admissibility of the unsigned promissory notes because they were unsigned and provided very little probative value. Contrary to Short's assertion, he had not properly authenticated the notes. He introduced no evidence or witnesses to prove the unsigned notes' authenticity or who might have recorded the notes in question. Given these facts and circumstances, we find no plain error.

### 2. *Scope of the Final Pretrial Order*

Short argues that the court improperly considered issues not contained in the Final Pretrial Order by (1) considering evidence regarding whether Short and Debtor agreed to subordinate the repayment of Short's advances and (2) concluding that Short's testimony on the matter was not credible. But Short's testimony and the court's subsequent credibility determination were well within the scope of the Final Pretrial Order. Whether Short and Debtor agreed to subordinate repayment of Short's advances directly implicates "[w]hether the Advances were loans under

Michigan law as argued in [Short's] Fourth Motion for Dismissal." We find no abuse of discretion here.

### D. Bankruptcy Court's Post-Hearing Opinion

In its post-hearing opinion, the court held that that eighteen of Short's twenty advances were capital contributions and that $257,939.44 in prepetition transfers were therefore fraudulent transfers under the Code and MUFTA. Short argues that the bankruptcy court (1) made several erroneous evidentiary findings in reaching its conclusion; (2) misapplied Michigan contract law; and (3), in its additional basis for its judgment, misapplied the *Roth Steel* factors. We address only the first two assignments of error and those only as they relate to the eighteen advances characterized as capital contributions (the "Advances at Issue"), reviewing the law de novo and the factual findings for clear error.

Debtor bears the burden of proving by a preponderance of the evidence both constructive fraud under MUFTA and fraudulent transfer under the Code. *See Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 F. App'x 337, 341 (6th Cir. 2006); M.C.L. § 566.35(3) (assigning the burden of proof to the creditor only when the creditor brings a claim under subsections one or two). Short argues throughout his brief that the bankruptcy court impermissibly shifted the burden of proof to him. But, in each instance that Short points to, the court merely analyzed the evidence or lack thereof before reaching its corresponding factual conclusion. *See, e.g.*, *Simon*, 596 B.R. at 619 (observing that there is no "credible evidence that the unsigned notes and alleged missing notes were ever executed" or "evidence regarding the terms of the Advances").

### *1. Bankruptcy Court's State-Law Right-to-Payment Analysis*

The Code and MUFTA are nearly identical as to whether a debtor can recover allegedly fraudulent transfers from the defendant.[4] The pertinent sections require a court to discern whether the defendant is entitled to the allegedly fraudulent transfers, or in other words, gave "reasonably equivalent value" for them. *See* 11 U.S.C. § 548(a)(1)(B); M.C.L. § 566.35(1). Under both statutes, a debtor may avoid a transfer if a debtor did not receive "reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B); M.C.L. § 566.35(1). "Value" for our purposes is property or satisfaction of an antecedent debt. 11 U.S.C. § 548(d)(2)(A); M.C.L. § 566.33(1). Furthermore, "debt" means "liability on a claim," 11 U.S.C. § 101(12), M.C.L. § 566.31(e), and a "claim" is a "right to payment." 11 U.S.C. § 101(5); M.C.L. § 566.31(c). So, we must decide whether Short's Advances to Debtor were loans or created a "right to payment."

Both the Code and MUFTA defer to Michigan law to define a "right to payment." *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007). Under Michigan law, "a loan only occurs when there is an obligation to repay" created by an unconditional promise. *Michigan v. Lee*, 526 N.W.2d 882, 885 (Mich. 1994) (defining "loan"). Michigan's statute of frauds, however, does not require a loan agreement to be in writing. *See* M.C.L. §§ 566.132(1)(b), (2)(a). So, to avoid the transfers, Debtor must show that it had no obligation to repay the Advances at Issue. The bankruptcy court concluded that Debtor carried that burden by showing that the record was devoid of evidence of Debtor's promise to repay or that the parties treated the Advances at Issue as loans. We find no clear error.

---

[4] Michigan repealed MUFTA with the Uniform Voidable Transfer Act ("UVTA"). M.C.L. § 566.45(1). The amendments and additions in the UVTA do not apply to the transfers at issue, however, because they occurred before the UVTA took effect on April 10, 2017. *See* M.C.L. § 566.45(2).

*Debtor's Internal Records.* Short argues that the court improperly found that (1) there were no executed promissory notes corresponding to the Advances at Issue; (2) there was no evidence regarding the terms of the Advances at Issue; and (3) there was no amortization schedule for any of the Advances at Issue. But, as Debtor pointed out at the evidentiary hearing, the record is devoid of any evidence of signed promissory notes, loan terms, or amortization schedules corresponding to the Advances at Issue. As Controller Feighner testified, Debtor's internal records contained four unsigned promissory notes, which are equivalent to four "blank pieces of paper." Short persistently points to the Loan Summary as evidence of the existing loans and their terms, but this explanation is not persuasive. The Loan Summary was prepared by Feighner using the signed and unsigned promissory notes during her audit of Debtor's internal records. It does not serve as independent proof of the loans.

*Short's Trial Testimony.* Short challenges the court's finding that his trial testimony was not credible and demonstrated his "carelessness, lack of knowledge, and total disregard for the issuance, terms, and enforcement of the alleged notes." We find no error here either. Short's testimony about the unsigned or missing notes is both vague and contradictory. For example, despite claiming that the advances were loans, Short could not specify why certain transfers were made—*i.e.*, whether they were to pay an antecedent debt—nor could he correlate any of the transfers to any of the unsigned promissory notes.

*Short's 2015 Affidavit.* In February 2015, one of Debtor's directors, Dr. Surindar Jolly, sued Debtor in Oakland County (Mich.) Circuit Court to collect on his promissory notes. In that case, Short attested to the way Debtor recorded advances from members and the conditions of repayment, if any. Short now argues that the court misconstrued his affidavit to mean that Short

never expected to be repaid and that he subordinated his claims to Debtor's other debt. But, Short's affidavit confirms the bankruptcy court's conclusion:

> [The Directors] all knew and understood that Doctors' Hospital did not have funds to repay notes on demand. When the three of us gave the hospital our personal funds to meet expenses, we knew and understood that in 30 days' times, 45 days' time, or one year, the hospital would likely not have available funds to repay us. [We] agreed amongst ourselves and with [Debtor] that we would not demand repayment until [Debtor] was financially strong and capable of repaying all investors, or until there was a sale of the hospital that might generate cash available to pay us back.

After careful review of the record and in light of the bankruptcy court's factual findings, we are not left with a definite and firm conviction that the court was mistaken when it concluded that the Advances at Issue were not loans but were capital contributions. The record contains no evidence of a promise by Debtor to repay Short, which is required by Michigan law. The unsigned promissory notes in the record do not contain loan terms and do not correlate to any of the Advances at Issue. Moreover, as for the alleged missing notes, we have no corroborating evidence that they existed. To be sure, Debtor's internal records label the advances as loans. But as the bankruptcy court held, there is no credible evidence of an unconditional promise to pay, and therefore, there is no loan. We find no error here.

### E. Judicial Estoppel

Short argues that Debtor should be estopped from arguing that the advances preceding the preference period were capital contributions because it argued earlier in the litigation that the 2015 Handshake Loan, which was not accompanied by a signed promissory note, was a loan. Indeed, "judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding," *Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir. 1994), or in a different phase of the same case, *White v. Wyndham*, 617 F.3d 472, 476 (6th Cir. 2010). But Debtor did not take an inconsistent position. In Debtor's Motion for

Summary Judgment on Count II, it argued that the Handshake Loan was not a loan.  Only after the court held that there was a genuine issue of material fact about whether Debtor incurred debt under the 2015 Handshake Loan in the ordinary course of business did Debtor abandon that argument. Otherwise, the argument has remained consistent throughout the litigation.  Estoppel is therefore inappropriate in this case.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.